[No. 2264.]

## CHARLES RUMMEL *v.* THE STATE.

1. PRACTICE—EVIDENCE—CASE STATED.—In a theft case wherein the "rule" was invoked, one N. advised the defendant's counsel, during the examination of a defense witness, that he knew important facts in connection with the said witness's testimony. N. was then offered by the defense as a witness, but was excluded upon the State's objection that the "rule" had not been applied to him, and that he had heard all of the testimony of the preceding witness. After the examination of other witnesses N. was again offered as a witness, and was again excluded upon the same objection and the further one that the defense had failed to place him under the rule after his former rejection, and that he had since heard the testimony of several witnesses. *Held*, correct.

2. SAME—CHARGE OF THE COURT.—However correct a requested instruction of the court may be, it is properly refused if its substance is embodied in the general charge.

3. THEFT—EVIDENCE.—See the statement of the case for evidence *held* sufficient to support a conviction for cattle theft.

APPEAL from District Court of Frio. Tried below before the Hon. D. P. Marr.

The indictment charged the appellant and Manuel Ingle, jointly, with the theft of a calf, the property of one, L. J. W. Edwards, in Frio county, Texas, on the twenty-ninth day of April, 1885. A severance being awarded, the appellant was placed upon his trial, was convicted, and awarded a term of two years in the penitentiary.

J. M. Brooks was the first witness for the State. He testified, in substance, that for about a month prior to April 19, 1885, a certain cow, branded LDE, and her red calf seven or eight months old, belonging to L. J. W. Edwards, ranged in witness's pasture in Frio county. The witness saw the cow and calf together nearly every day while they were in the pasture. Witness turned them out of his pasture on or about the said April 19, 1885, and thereafter frequently saw them together on the range. On or about April 29, witness saw defendant and one Manuel Ingle driving a herd of six or seven cattle through his, witness's, pasture gate. A boy rode ahead of them. Among those cattle witness recognized the calf of the "LDE" Edwards cow. The said calf was being chased by Manuel Ingle, while defendant was driving the herd. The calf evidently did not want to go with the herd, which did not include its mother. Witness went down to the herd and told Ingle that the calf belonged to the "LDE" Edwards cow. Ingle replied: "I reckon not," turned his horse and exhibited the diamond J brand, and said that he was driving only the cattle in that brand. Witness replied that he knew the calf quite as well as he knew his own animals, and knew it belonged to the Edwards cow. Ingle said that he got the calf and its mother on Buck Horn creek, but that the mother escaped. The route to Pearsall from witness's pasture would be over the public road with the railroad track. Witness saw the LDE cow on the next day. She was going about with a full udder, lowing for and hunting her calf. Witness had never seen the calf since it was taken off by defendant and Ingle. Persons going from Mr. Austin's in the direction traveled by defendant and Ingle would pass through witness's pasture, and through the gate where witness first saw defendant and Ingle. The witness could not say that defendant heard the conversation between Ingle and himself.

Lindsay Austin was the next witness for the State. He testi-

fied that he lived with his father, about a mile and a half dis-
tant from Brooks's pasture. He knew the animal described in
this indictment, and had regarded it as the calf of the LDE
cow, which belonged to Edwards. The LDE cow and this calf
had run with the cattle of witness's father for some time prior
to April 29, 1885, as did a certain black heifer one or two years
old. While in his father's field on the evening of said April 29,
witness saw two men, whom he did not recognize, go to a bunch
of cattle on the range, and drive off the black heifer and the
calf described in this indictment. They drove them towards the
Brooks pasture. Witness had not seen the calf since. The
LDE cow came up with witness's father's cattle that night, low-
ing and hunting for her calf. Witness saw her again next day,
her udder full, and still hunting her calf. The witness had
never seen the calf suck the LDE cow, and did not positively
know that it was her offspring, but confidently believed so. The
LDE cow's bag indicated that she had a calf, and all of the cat-
tle in the bunch, except that cow and calf and the black heifer,
belonged to witness's father, and witness knew them.

L. J. W. Edwards testified, for the State, that his cattle brand
was LDE on the side. He never gave defendant nor Manuel
Ingle permission to take or drive any of his cattle, nor had he
ever traded or sold any cattle to either of them. Witness's res-
idence and cattle range were in Frio county. Witness had
never seen the calf in question, and had no personal knowledge
concerning it or its mother, but knew that his cattle ranged
pretty much all over Frio county. The State closed.

Mrs. Ernstine Rummel, the defendant's wife, was his first
witness. She testified that she and her husband lived about one
mile northeast of the town of Pearsall, in Frio county, Texas.
She was at home on the morning of April 29, 1885, when de-
fendant and Ingle went off. They came back about eleven
o'clock, bringing five or six head of cattle. They kept those an-
imals at the house until about four o'clock p. m., when they
started with them to Mr. House's place. Witness did not closely
examine the animals, but knew that most of them belonged to
Mr. House, whose brand was diamond J. Ingle was in House's
employ. It was agreed by Ingle and defendant that defendant
was to help Ingle gather House's cattle, and Ingle was to help
defendant gather his cattle.

Fred Rummel, the defendant's brother, testified in his behalf,
that he was on Buck Horn creek two or three weeks before

April 29, and saw one of Mr. House's cows that had a blood red heifer calf, in every respect resembling the calf described in the indictment. He told Mr. House and Manuel Ingle, who was in House's employ, and House expressed a great anxiety to get the animals. Defendant, Ingle and Ingle's little boy passed witness's house on the twenty-ninth day of April, 1885, driving a bunch of five or six cattle, including a calf which the witness thought was the one he previously saw on the Buck Horn. Ingle called to witness: "I made the trip better than you did. I got the calf if I didn't get the cow." Defendant and witness had an arrangement with House whereunder House and his hands helped them with their cattle, and they helped House. Among the cattle driven on the twenty-ninth day of April was the defendant's certain black heifer, which had been ranging about Austin's. The witness was satisfied that the calf driven by Ingle and defendant on the said April 29, was the calf he saw with House's cow on the Buck Horn two or three weeks before.

The motion for new trial raised the questions discussed in the opinion.

*Price & Merriwether* and *J. T. Bivens*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE. Appellant and Manuel Ingle were jointly indicted for the theft of a calf, the property of L. J. W. Edwards, and upon severance appellant was placed upon trial and convicted.

Both parties called for the "rule," and the witnesses were sworn and placed thereunder. One Nuckols, who was in attendance on the court as a juror, was present at the trial, heard the testimony of Mrs. Rummel, a witness for defendant, and informed counsel for defendant, while she was testifying or just after she had finished, that he knew some material facts in connection with her testimony. Counsel for appellant then offered Nuckols as a witness. The Stated objected because he had been present, hearing the testimony of the witnesses, and had not been under the rule, and counsel for appellant stated that neither he nor his client was ever advised that Nuckols knew any facts, and especially the facts proposed to be proved by him. The learned judge rejected the witness and the court took a recess for the space of two hours, awaiting the arrival of

another witness. At the expiration of the two hours court met and the trial proceeded with the examination of the witnesses. After one witness had been examined for defendant Nuckols was again offered and the State again objected, also upon the ground that after hearing that Nuckols was a material witness for defendant and his counsel had neglected to have him placed under the rule, but permitted him to remain in the court room and hear the testimony of other witnesses to testify besides Mrs. Rummel, the court sustained the objection. In this there was no error. This disposes of the first and second assignments of error.

The third assignment of errors is: "The court erred in not giving the special charge asked by defendant." The charge reads: "The court instructs the jury that if they believe from the evidence that the defendant, Charlie Rummell, was aiding and assisting Manuel Ingle in gathering and driving the cattle of John House, and that they took a calf, the property of Edwards, and that the said Rummell at the time honestly thought that the calf was the property of John House, and took it in accordance with such belief, he is not guilty of theft although Manuel Ingle may have known that the calf was not the property of John House. And if the jury have a reasonable doubt on this point, arising out of the evidence, the defendant, Charles Rummell, is entitled to the benefit of the same, if in fact they have a reasonable doubt as to the guilty intention of the defendant." This charge was very clearly required by the facts of this case, and, if not given elsewhere in the charge, this judgment must be reversed. The learned judge, however, refused this charge, because, he says, it is embraced in the general charge, and by referring to the latter clause of the fifth paragraph of the charge it will be seen that the principle contained in the special charge is clearly, affirmatively and pertinently given to the jury ; hence there was no error in refusing to give the special charge.

The last error assigned is that the court erred in overruling the motion for new trial, because the verdict is not supported by the evidence. We do not believe this ground well taken, and this court would not be warranted in reversing the judgment in this case for want of sufficient evidence to support the verdict.

The judgment is affirmed.

*Affirmed.*

Opinion delivered December 11, 1886.