# GEORGE JACKSON V. THE STATE.

No. 20146.  Delivered March 1, 1939.
Rehearing Denied April 12, 1939.
Appellant's Request for Leave to File.
Second Motion for Rehearing
Denied (Without Written
Opinion) January 19, 1939.

The opinion states the case.

*Percy Woodard*, of Marshall, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The offense is murder; the punishment assessed is confinement in the State penitentiary for life.

The evidence adduced by the State, briefly stated, shows that on the night of the 14th day of March, 1938, appellant shot his wife's arm off and also shot and killed his son, Oscar, a man of about twenty-seven years of age, and then set fire to the house and virtually cremated the body of his son.

Appellant and his wife did not get along very well, and several months prior to the fatal difficulty, he engaged the services of an attorney for the purpose of obtaining a divorce, but they continued to live together up to the time of the unfortunate occurrence without having obtained it. The State further proved that within a very short time after the homicide, the officers went to appellant's home and found him in a plum thicket with a shotgun. They disarmed him and he told them he had killed his son and shot his wife because they were unkind to him and that the son would not work.

Appellant testified in his own behalf, admitting the killing of his son; that he shot his wife and attempted to kill himself. He stated that he did not remember setting fire to the house and burning it.

He further testified that he had been married twice; that after his first wife died, he married his present wife in 1927, who was, at the time of the homicide, fifty-seven or fifty-eight years of age. That early in the morning of the day of the alleged homicide, he caught his wife and son in an act of sexual intercourse. That thereafter he gave his son some money to go to town and purchase some steak and corn. That the son returned about 5:00 P. M. with the steak but without the corn. After

dark while he and his wife were sitting on the porch, he noticed his son make a motion to his stepmother, indicating that he wanted her to come into the house. That she got up, walked into the kitchen and he, appellant, followed about two minutes later armed with a gun. That he again saw them engaged in an act of sexual intercourse in the kitchen, whereupon he shot and killed the boy. His wife ran out, but a few seconds later returned to the kitchen and he shot her, striking her arm.

Bill of exception number one reflects the following occurrence. At the beginning of the trial, all witnesses were placed under the rule. On the next morning after the trial had begun, the witness, Henry Long, entered the court-room and remained therein for nearly an hour and heard some of the witnesses testify. Thereafter when the defendant called Long to the witness stand to testify concerning his good reputation as a quiet, peaceable, law-abiding and truthful man, the State objected on the ground that the witness had disobeyed the rule; that he had remained in the courtroom while the testimony was being given by other witnesses. The court sustained the objection, to which appellant excepted.

Such matters rest largely within the discretion of the trial court, and unless it is made to appear from the bill that the trial court abused his discretion to appellant's prejudice, this court would not be authorized to reverse the judgment. This bill fails to show such an abuse of discretion. See Rummel v. State, 22 Tex. Crim. Rep. 558; 3 S. W. 763; Leache v. State, 22 Tex. Crim. Rep., 279; 306; George v. State, 17 Tex. Crim. Rep., 513 (516); Branch's Ann. P. C., Sec. 344, p. 197.

Bill of exception number two reflects the following occurrence. Appellant sought to prove, and alleges he would have proved, by the witness Charles Wheeler, if permitted to do so, that appellant's reputation for truth and veracity was good. The State objected thereto on the ground that appellant's reputation for truth and veracity had not been attacked. Appellant contended, however, that since the State had shown in the development of its case that he stated to the officers that he killed his son and shot his wife because they were unkind to him, and because the son would not work, that this was an attack upon his reputation for truth and veracity, since he took the witness stand and testified that he shot them because they were carrying on illicit relations.

We are unable to agree with appellant. If the State had asked him if he had not made such a statement to the officers on the night in question and he had denied it, and the State had

then offered testimony that he had made such a statement, there might be some merit to his contention, but such was not the case. The State offered the statement, made by him to the officers, immediately after the alleged offense, as original testimony, which he denied in a manner by stating that he did not remember it. We do not see how this was an attack upon his veracity. He merely contraverted the State's testimony in this respect.

Bill of exception number three reflects the following occurrence. The State, on cross-examination of appellant, asked him if he would know his wife if he should see her, (he having been confined in jail since the commission of the alleged offense), to which he replied: "I don't know whether I would know her now if I would see her; she might change up so." The wife was then called into the courtroom in order that he might look at her, but he did not identify her. She was immediately retired from the courtroom and no further questions relative thereto were asked. Appellant objected, however, on the ground that it was using the wife as a witness against him and that such was highly prejudicial to him to parade her before the jury.

That thereafter appellant was recalled to the witness stand to give further testimony in his behalf and the State, on cross-examination, again asked him if he would know his wife if he saw her, to which he replied: "I might," or words to that effect. Whereupon the wife was again brought into the courtroom, but was immediately requested to retire and did so. Appellant again objected for the same reasons—that it was highly improper and prejudicial to him to parade an armless woman before the jury.

We do not regard this as requiring the wife to give testimony against her husband; nor was the act of appearing in the court room with an empty sleeve of such a prejudicial nature as to require a reversal of the case. The fact that he had shot her arm off was shown, not only by his own testimony, but by that of the other witnesses. Consequently the jury was fully informed of it.

Bill number four complains of certain remarks of the district attorney in his closing argument to the jury. We have examined the bill in connection with the facts proved, and find that the remarks were based on testimony adduced upon the trial. The district attorney had a right to review and discuss the testimony and to draw reasonable conclusions therefrom

and unless he departed from the facts and injected other matter not in evidence, there would be no error.

We note that the trial court, in sentencing the appellant, failed to observe the indeterminate sentence law. Therefore, the sentence will be reformed so as to read that appellant be confined in the state penitentiary not less than two years nor more than life.

All other matters complained of by appellant have been examined by us and are deemed to be without merit.

As reformed, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant has filed a vigorous motion herein complaining of practically the whole of our original opinion herein where we took notice of his bills of exceptions. We have again carefully gone over the record.

In his bill of exceptions No. 1 he complains because of the exclusion of the testimony of Henry Long, who was sworn in as a witness for the appellant, and instructed by the trial court relative to the rule under which the witnesses were placed on motion of the appellant's attorney. The witness violated the rule by remaining in the court room and hearing the testimony of at least one of the witnesses, and the trial court, in the exercise of his discretion, refused to relax the rule and let this witness testify. True this witness was only a character witness, but under the court's qualification we find that the court had warned attorneys to watch out for their witnesses and see that none remained in the court room, and we still do not think that the trial court abused his discretion in refusing to allow this witness to testify, after he had violated the court's instructions, and heard part of the tesimony. Such matters are usually left to the discretion of the court.

Appellant's second bill is concerned with the trial court's refusal to allow the witness Wheeler to testify relative to appellant's reputation for "honesty and veracity." We note that the witness had been allowed to testify that appellant's reputation for "peace and violence" was good, and upon such witness being asked regarding appellant's reputation in the community in which he lived for "honesty and veracity" the State objected

to such question on the ground that such a question was not a proper question, and was not asked in a proper case, which objection was by the court sustained. We think the court was correct in his ruling on such question. We can see no reason why appellant's reputation for honesty was included in such a question. He was not charged with a crime that impugned his honesty. Appellant claims, however, that because of the fact that certain statements testified to by witnesses as having been made by appellant at the scene of the offense, and which were contradictory of his testimony given on the trial, amounted to an attack upon appellant's veracity. We think this bill has been properly disposed of in our original opinion, and that the trial court was correct in sustaining the State's objection to the question.

Bill No. 3 complains because of the fact that appellant's wife, Lucy Jackson, whose arm had been shot off in the transaction wherein Oscar Jackson, the deceased, lost his life,—was called into the court room for identification by the appellant. The reason for the witness being thus brought into the court room being because the appellant, while on the stand, was asked if he would know his wife if he would see her, and his answer being as shown by the court's qualification: "I don't know whether I would know her now if I would see her, she might change up so," but at this first attempt to have his wife enter the court room before the appellant and jury, and be identified by appellant, the court seemed to have sustained the objection of appellant's attorney. At a later point in appellant's testimony, however, the woman was finally brought into the court room, and the appellant then said "That's her, alright," and she immediately left the court room.

It is contended that such a proceeding was violative of the statute, Art. 714, C. C. P., which prohibits a wife testifying against her husband, except in certain instances. It will be noted that this woman was merely brought into the court room for the purpose of identification only; that she was not sworn, nor did she say a word. True it is, she was minus one arm, which had been shot off by appellant, so the testimony showed, but the sight of this one armed woman could not have changed the effect of the facts relative to how she lost her arm, and such facts had already found their way into the minds of the jury in the res gestae testimony before them. We quote from Barra v. State, 50 Texas Crim. Rep. 359:

"There is some question raised as to having appellant's wife come in before the jury for the purpose of identifying her

as his wife, and having appellant on his cross-examination testify that the woman, Albina, was his wife. This does not come under the rule laid down by this court in Moore v. State, 45 Texas Crim. Rep. 234. There the wife was sworn as a witness against her husband. She was brought in here merely for the purpose of identification by the husband, and we believe it was competent to prove by him that she was his wife. Furthermore, no injury was shown to appellant on this account." See Hearne v. State, 58 S. W. Rep. 1009; also the late case of Wineman v. State, 26 S. W. (2d) 645.

Appellant's bill No. 4 relates to the argument of the State's attorney wherein he sets out in descriptive words the scene at the burning of the house and the capture of the appellant, and the finding of the burned body of the deceased. While the attorney did make the statement that he was there, and others were there also, nevertheless we think he depicted the sur- roundings from the ideas conveyed by the witnesses while they were on the stand, but of course in language of his own, and although he did not testify, some of his statements may have been tinctured with what he knew rather than with what the testimony was, nevertheless we think the argument complained of was fairly deducible from the facts, and the mere fact that such attorney said in his argument that he was there, could not have had any improper influence upon the jury. It is to be noted that the fact that such attorney was there was testified to by practically all the State's witnesses as well as by the appellant, and we do not think that a mere statement that the State's attorney was there evidences any serious error.

Under a proper instruction from the court the jury passed not only upon the question of appellant's guilt but also upon his sanity. They found him sane under conflicting testimony, and we feel that we have neither the right nor the power to set their verdict aside under the record herein.

There may have been some minor mistakes made in a recitation of the record in the original opinion, which are vigorously complained of by appellant's attorney in this motion, but they consist mainly of a distinction without a difference, and do not merit the harsh criticism leveled at them in the motion.

We have again gone over the entire record and see no reason to recede from the position taken in our original opinion herein. The motion will therefore be overruled.