TRUMAN PRICE V. THE STATE.

No. 23504. Delivered December 4, 1946.
Rehearing Denied February 12, 1947.

B. R. Reeves, of Palestine, for appellant.

Ernest S. Goens, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the State penitentiary for life.

The record reflects that appellant was indicted on the 11th day of July, 1945; that thereafter, on the 23rd day of April, 1946, an affidavit was filed in said cause charging him with being a person of unsound mind and incapable of conducting a rational defense. A trial was had before a jury on the issue of insanity alone, and they returned a verdict finding him sane. Thereafter, on the 16th day of May, 1946, he was put to trial for the offense of murder. Upon said trial the appellant again plead insanity. The jury found him sane and also found him guilty of murder, for which they assessed his punishment as above stated.

The State's evidence, brielfy stated, shows that on or about the 20th day of June, 1945, appellant went to the home of W. A. Holloway, and while there struck him on the head with an oak stick about 16 or 18 inches long and about 1 1/2 inch in diameter, and therewith inflicted a wound upon Mr. Holloway from the effects of which he died. Appellant then took the old

man's watch and departed, going to the home of George Feltman, with whom he was living at the time. He showed the watch to Mrs. Feltman and told her that he had won it in a game of craps with a negro and a white man. He gave the watch to Mrs. Feltman with the request that she keep it for him. On·the following morning the body of Holloway was found by A. F. Young, who came there to deliver ice. Young reported the finding of the body to the officers, who immediately began an investigation, and discovered that the watch of the deceased was missing. On that same afternoon appellant was arrested but later released. On the second day after the commission of the offense. Feltman reported to the officers the presence of a gold watch at his home. In response to this information, the officers went to the home of Feltman and obtained the watch from Mrs. Feltman. They arrested both appellant and Feltman. While under arrest appellant made a voluntary confession in which he admitted killing Holloway with the stick in question and taking his watch after he had knocked him down.

Appellant's defense was insanity. He proved by a number of witnesses that he was weak-minded and had been so from childhood; that he had gone to school until he was nearly 17 years of age but never progressed further·than the third grade. The State rebutted this testimony relative to his insanity, and thus an issue of fact was raised which the jury decided adversely to his contention.

He brings 14 bills of exception, the first five of which may be considered and discussed together inasmuch as they relate to the same subject matter. In these bills he contends: (1) that the court erred in declining to instruct the jury that Mr. and Mrs. Feltman were accomplice witnesses as a matter of law; (2) in failing to define the term "accomplice"; and (3) in declining to submit to the jury the question of whether or not Mr. Feltman was an accomplice witness. The solution of that question ordinarily depends upon the evidence adduced on the trial of the case. We find no evidence in the record which, in the remotest degree, tends to bring Mrs. Feltman within the category of an accomplice witness, nor does the evidence show Feltman to be an accomplice witness as a matter of law.

Whether or not the evidence is sufficient to raise the issue of an accomplice witness as it relates to Feltman, and whether or not that issue should have been submitted to the jury is of little moment since the jury could not, under the evidence adduced by the State, which was not controverted, have reached

any other conclusion than that appellant committed the offense for which he was on trial, even though they had not considered Feltman's testimony at all. Consequently, the refusal of the court to submit that issue would not, under the facts of this case, constitute reversible error. However, we suggest that upon another trial the court submit the issue in the event appellant should request it. In support of the opinion here expressed we refer to the following authorities: State v. Bogan, 114 Tex. Cr. R. 468; 22 S. W. (2d) 944; McDougal v. State, 81 Tex. Cr. R. 179, 194 S. W. 944; McKnight v. State, 136 Tex. Cr. R. 492, 126 S. W. (2d) 671; Wilkerson v. State, 93 Tex. Cr. R. 50, 245 S. W. 430.

The other nine bills of exception complain of certain remarks made by the County and District Attorneys in their arguments to the jury. Bill No. 6 shows that the County Attorney, in his argument to the jury, made the following remark:

"The defendant, in my opinion, is not insane; the penitentiary is full of men as insane as this defendant."

To which remark appellant in due time objected on the ground that it was new evidence, prejudicial, etc. The trial court promptly sustained the objection and orally instructed the jury not to consider it. No written charge on the subject was requested. While the remark was improper and should not have been made since there was no evidence to justify the same, yet the prompt action of the trial court in withdrawing it from the jury cured the evil effect thereof, if any.

The other bills of exception complaining of the conduct of the District Attorney in wielding before the jury the instrument with which the death blow was inflicted while making his closing argument to the jury, are, in our opinion, without merit and are overruled.

The next question presented for review relates to the court's action in overruling his motion for a new trial based on misconduct of the jury. It appears from the motion and the affidavit of each of the jurors that after they retired to deliberate on their verdict, they first discussed the issue of insanity and decided that he was sane; that they then discussed the issue of his guilt and decided that he was guilty of the offense charged; that they then discussed the question of the penalty to be imposed upon him; that during the discussion of this question one juror contended for the death penalty, one for fifty years,

one for twenty-five years, and the remainder for life imprisonment in the penitentiary, whereupon the foreman of the jury remarked that if they assessed appellant's punishment at any number of years he would, in the course of a few years, be subject to parole, but if they assessed his punishment at confinement in the State penitentiary for life, he could not be paroled; that they then all voted for life imprisonment. It thus affirmatively appears from the record that the remark of the foreman had the effect of bringing about the enhanced punishment; that he (the foreman) no doubt intended it to have that effect. Under the facts disclosed by the record, we do not believe that the defendant had such a fair trial as would warrant the judgment of conviction to stand. See Art. 753, subd. 7, C. C. P.; also Hudson v. State, 144 S. W.(2d) 893; Derrick v. State, 80 Tex. Cr. R. 10; Tutt v. State, 49 Tex. Cr. R. 202. See also McDougal v. State, 81 Tex. Cr. R. 179, 194 S. W. 944, where the subject is fully discussed and many authorities reviewed.

From what we have said it follows that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

DAVIDSON, Judge.

The correctness of our conclusion that the jury was guilty of misconduct in arriving at the penalty in this case is challenged by the State.

Abstractly stated, the facts show that the jury, during their deliberation, promptly concluded that appellant was guilty of the offense charged and that he was sane. There remained for their determination, then, only the punishment to be assessed. As to this, the jury were divided. Three of the jurors were in favor of a penalty less than life imprisonment in the penitentiary. Under such circumstances, the foreman or a member of the jury used as argument against the position of those three jurors and to secure a punishment of life imprisonment the fact that, under a penalty of imprisonment in the penitentiary for a term of years less than life imprisonment, appellant would be

eligible to parole in a few years, but that such could not happen if the punishment assessed was life imprisonment in the penitentiary.

The legal effect of that argument was that if a term of years was assessed, appellant would receive the benefit of the indeterminate sentence law (Art. 775 and 775a, C. C. P.), and if life imprisonment was assessed, such law would not apply and appellant could not receive the benefit thereof.

In the first instance, the juror was wrong in his statement, for the indeterminate sentence law does not apply to a punishment of life imprisonment in a murder case where, by statute, a minimum punishment of a term of years in the penitentiary is authorized to be assessed. Jackson v. State, 136 Tex. Cr. R. 574, 126 S. W. (2d) 965. The indeterminate sentence law does not apply to a penalty of life imprisonment in the penitentiary when such is the only penalty that is authorized to be assessed, such as in the case of the so-called habitual criminal. Art. 63, P. C.

So then, we have here the juror not only advising the other jurors as to the application of the indeterminate sentence law to their verdict, but incorrectly so.

In Pena v. State, 137 Tex. Cr. R. 311, 129 S. W. (2d) 667, it was held error for State's counsel in closing argument to the jury to call attention to the effect and application of the indeterminate sentence law to the punishment to be assessed. Such holding is founded upon the proposition that the application of the indeterminate sentence to a jury's verdict, being required by statute, is a matter for the courts and not for the jury. The wisdom of that statute is for the legislature.

If State's counsel could not argue to the jury the effect of the indeterminate sentence law, certainly a member of the jury could not do so.

We remain convinced of the correctness of our original conclusion, and the State's motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.