SAMUEL LEROY MOORE V. STATE

No. 33,163. April 19, 1961
Motion for Rehearing Overruled May 24, 1961

WOODLEY, Presiding Judge, absent.

*Percy Foreman, Alan Haley* and *Raeburn Norris*, Houston, for appellant.

*Frank Briscoe*, District Attorney, *Samuel H. Robertson, Jr.*, *Fred M. Hooey*, Assistants District Attorney, Houston, and *Leon Douglas*, State's Attorney, Austin, for the state.

McDONALD, Judge.

Murder with malice is the offense, with punishment assessed at life imprisonment in the penitentiary.

In view of our disposition of this case, we shall pretermit a discussion of the other contentions raised by appellant and confine ourselves solely to the contention of jury misconduct.

In his motion for new trial, appellant urged that during the jury's deliberations they received other testimony; that shortly after the jury retired they agreed upon a "guilty" verdict; that there was a ballot taken as to punishment, wherein several jurors were for a suspended sentence, several were for a short sentence up to ten years, and only two were for death or a long sentence. It was further alleged that several jurors then brought up the Selby murder case, about which they had read in the newspapers, to the effect that Selby was given life—which meant that he would serve only seven or eight years; that, after several hours of this type argument and the receipt of other testimony about the Selby case and other cases, it was this argument about what "life" meant that finally brought the ten jurors from a suspended sentence, or a short term, up to a life sentence.

The motion was supported by affidavits from two of the jurors.

Seven of the jurors who served in the case testified upon the hearing of the motion, six of them being witnesses for the appellant and one being a witness for the state. The same two jurors who had executed affidavits in support of appellant's motion for new trial were among the seven testifying at the hearing of the motion.

The state answered, controverting appellant's motion, and in support of its answer attached thereto affidavits from all seven of the jurors who testified in the hearing upon such motion.

The two affiants whose affidavits were attached to the motion for new trial executed the instruments on August 19 and

August 20, 1960. All seven affidavits attached in support of the state's answer were executed on September 16, 1960, which was the same date on which the motion for new trial was heard and denied by the trial court.

We observe that all the affidavits attached to the state's answer are practically identical in length and in meaning. The state did not directly nor conclusively controvert appellant's fact issues—unless resort is to be made to the affidavits attached to the state's answer and the statement of facts adduced at the hearing for new trial is to be disregarded.

The evidence adduced from the seven witnesses testifying on the motion for new trial is summarized as follows:

The witness Goode testified, without dispute, that he and the other jurors voted by the secret code system; that they first determined appellant's guilt and then on the first ballot or so there was a rather wide variance in the verdict, some being for a suspended sentence, some up to several years, some up to life imprisonment, and two or three for the electric chair; that after this vote and before a unanimous decision the jurors discussed what "life in the penitentiary" meant, and interpreted it as meaning confinement in the penitentiary for seven or eight years; and that the Selby murder case was mentioned. The witness' further testimony was that all the jurors agreed on a ten-year sentence except one man, who held out for fifteen or twenty years; that they believed "that a parole could be possible within the same length of time if it was life or ten years"; that after further discussion the jurors all finally agreed on a life sentence.

Coley, the next witness, testified that he remembered the Selby case being mentioned in the discussion concerning the meaning of life imprisonment and the number of years a man "would stay in the pen" and that a life sentence, with good behavior, would mean seven or eight years; that they, the jurors, then arrived at a verdict of life imprisonment.

The next witness, Mrs. Richardson, testified that the Selby murder case, which had recently been tried, "was mentioned as an example" in the discussion as to punishment; that the first few times the jurors voted there were over three in favor of a two-to-five year sentence, some for five to ten years, "some 10; some 25, some life, two or three death."

Another witness, Mrs. Meadows, testified that on the first ballot she was for a five-year suspended sentence and then for a four-year suspended sentence; that, regarding the length of time a person under a life sentence would serve, there was a discussion to the effect that "it would be possible for a parole at 9 years and on good behavior, less"; that it was after this discussion that she voted for "life."

Patrick K. Duffy, the state's only witness, and foreman of the jury on the trial of the case, testified that he voted for the death penalty on the first ballot; that the Selby case was only mentioned when someone said: "if [Selby] was in Houston he would have gotten the death penalty, and someone said they read in the newspaper that he could be eligible for parole in 8 or 10 years or something of that nature." The witness repeated that the Selby case was mentioned only in that one instance in a two or three-minute discussion as to how much time a person would have to serve if he got "life." The witness further stated that he recalled the Selby case coming up before any vote was ever taken on a verdict.

The next witness, J. W. Mann, testified that his first ballot was for forty years; that he heard the Selby murder case mentioned only after they (the jury) had cast several ballots and had found appellant guilty; that Selby had been given a life sentence "and could get out in 7 or 8 years"; that before the jury arrived at a unanimous sentence of life there was a discussion as to the meaning of "life" being seven or eight years.

Lucas, the last witness, testified that he was for life sentence on his first ballot; that the jury took about eighteen or twenty more ballots; that at one point he came down to ten years. He further testified that the Selby murder case was mentioned very briefly in the deliberations; that a discussion about the length of time Selby would have to serve was used as an example of a life sentence; that there was a possibility of a person with a life sentence being eligible for parole in seven or eight years "upon good behavior and the Board of Trustees [sic] and the Governor putting him on parole."

It is the state's position that the exact question here presented was decided adversely to the appellant's contention in Montello v. State, 160 Tex. Cr. Rep. 98, 267 S.W. 2d 557, and the facts in this case are identical with the reported facts in Montello's case.

In examining Montello, we find that, while deliberating, the foreman brought to the attention of the jury the fact that he had read a newspaper article which, in substance, said that the average person who received a life sentence served an average of eight years prior to the time he was pardoned by the " 'Parole Board of the State of Texas.' " This matter was brought up two or three times but there was no appreciable discussion about it.

It is not clear from the facts in the Montello case as to when any discussion was had, but the dissenting opinion indicates that it must have occurred before the vote on the question of punishment.

Be that as it may, while Montello may be regarded as authority for the proposition that it is knowledge that we have in Texas a board of pardons and paroles and that, together with the Governor, they exercise the power vested in them to grant clemency in the matter of pardons and paroles and commutation of punishment, such "common knowledge" must be correct as a matter of law in order to be properly employed by a jury in reaching a verdict.

We do not feel that the question here presented is in any way identical with the facts in Montello.

In Roberson v. State, 160 Tex. Cr. Rep. 381, 271 S.W. 2d 663, in passing upon the question of jury misconduct directly growing out of the receipt of other testimony after retirement of the jury, it was held that this court's primary concern was to determine whether or not the information received by the jury was untrue or was harmful to the appellant. This court held that the statements made in the jury room were not untrue and that appellant was not harmed thereby. Consequently, the judgment in that case was affirmed.

If statements are untrue, the making of them clearly constitutes misconduct warranting reversal. Mays v. State, 167 Tex. Cr. Rep. 339, 320 S.W. 2d 13. The Mays case was reversed because a juror said that appellant would have to serve one year and three months on a five-year sentence, when, actually, he would have to serve one year and eight months —which was a longer period than that stated by the juror.

In Farias v. State, 167 Tex. Cr. Rep. 546, 322 S.W. 2d 281,

the foreman of the jury, who was opposed to the suspended sentence law, told his fellow jurors that the judge would probably place appellant upon probation. This was a misstatement of the law on the part of the jury foreman, since a judge can not place a defendant on probation who has been convicted of murder.

In the instant case, we feel that most of the statements made by the various witnesses in their testimony on the motion for new trial constituted misstatements of law which no doubt caused the sentence imposed to be enhanced beyond what it would have been had the statements not been made.

Art. 781d, Sec. 15, V.A.C.C.P., authorizes all persons confined in penal institutions of this state, except those persons under the sentence of death, to be released on parole after recommendation by the pardons board and the approval of the governor, when one-third of the maximum sentence imposed has been served, with the further provision that one may be paroled —in any case— after serving fifteen years.

Under this record, we are of the opinion that the incorrect statements made by the various jurors in their discussions and the subsequent vote on the part of some of the jurors to increase the penalty constituted misconduct to the extent that this appellant has not received a fair and impartial trial.

For other cases in point, see: Price v. State, 150 Tex. Cr. Rep. 161, 199 S.W. 2d 168, and Spriggs v. State, 160 Tex. Cr. Rep. 188, 268 S.W. 2d 191.

For the reasons stated, the judgment is reversed and the cause is remanded.