Martin Wayne MUNROE, Appellant,

v.

The STATE of Texas, Appellee.

No. 026–82.

Court of Criminal Appeals of Texas,
En Banc.

July 14, 1982.

Jerry J. Loftin, Danny D. Burns, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, Asst. Dist. Atty., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ROBERTS, Judge.

The petitioner pleaded guilty to the offense of aggravated robbery. He chose to have a jury assess punishment. The jury assessed punishment at confinement for ten years. This judgment was affirmed by the court of appeals. *Munroe v. State*, 624 S.W.2d 688 (Tex.App.—Fort Worth, 1981). We granted the appellant's petition for discretionary review in order to resolve conflicting standards for review among the various courts of appeals in cases involving allegations of jury misconduct. Compare *Munroe v. State*, supra, with *Sneed v. State*, 625 S.W.2d 761 (Tex.App.—Amarillo, 1981).

In *Heredia v. State*, 528 S.W.2d 847 (Tex. Cr.App.1975), the court reviewed many of its earlier cases which dealt with jury discussion of parole laws. The court found that these cases revealed an "inconsistency of standards". *Id.* at 852. As the court stated:

"Authority may be cited for a standard requiring a showing that (1) a misstatement of the law (2) asserted as fact (3) by one professing to know the law (4) which is relied upon by other jurors (5) who for that reason change their vote to a harsher punishment, before reversible error is shown; but likewise authority may be cited which would require only a showing that a statement on the parole law was made and it was either untrue or it was harmful. Much distance lies between these extremes." *Ibid.*

In addition, the court held that cases involving jury discussion of parole laws may be analyzed as either the receipt of other evidence, prohibited by V.A.C.C.P., Article 40.03(7), or as jury misconduct, prohibited by V.A.C.C.P., Article 40.03(8).

Although the court rejected the State's contention that reversal would not be required without a showing by the defendant that a juror who misstates the terms of the parole law must profess to know the law, *Id.* at 850, the court did not affirmatively set out the proper standards to be used. Because our own cases since *Heredia*, and those of the courts of appeals, have continued to apply inconsistent tests for reversible error, we will now revisit the cases and set forth the proper test to be applied to the analysis of jury misconduct.

I.

Article 40.03(8)

V.A.C.C.P., Article 40.03 provides:

"New trials, in cases of felony, shall be granted the defendant for the following causes, and for no other:

\*        \*        \*        \*        \*        \*

(8) Where, from the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial. It shall be competent to prove such misconduct by the voluntary affidavit of a juror; and the verdict may, in like manner, be sustained by such affidavit. . . ."

Our cases have clearly held that *any* discussion of the parole law by the jury constitutes jury misconduct. *Jones v. State*, 596 S.W.2d 134, 137 (Tex.Cr.App. 1980); *Sanders v. State*, 580 S.W.2d 349, 351 (Tex.Cr.App.1978); *Ashabranner v. State*, 557 S.W.2d 774, 777 (Tex.Cr.App.1977); *Moore v. State*, 535 S.W.2d 357, 358 (Tex.Cr. App.1976); *Heredia v. State*, 528 S.W.2d 847, 853 (Tex.Cr.App.1975). The parole law is simply not to be considered by the jury during its deliberations. As we said in *Sanders*, supra:

"It would be improper for punishment to be based on an expectation that clemency powers would be exercised, and it would be unconstitutional to attempt to delay the exercise of the clemency powers or to avoid the possible granting of parole by increasing punishment in anticipation thereof. Article II, Sec. 1 of the Texas Constitution provides for the separation of governmental powers among the three distinct departments, the executive, legislative, and judicial. It is well established under this Article that:

'(A) power which has been granted to one department of government may be exercised only by that branch to the exclusion of the others. ... And *any attempt by one department of government to interfere with the powers of another is null and void.'* Ex parte Giles, Tex.Cr.App., 502 S.W.2d 774; Smith v. Blackwell, Tex.Cr.App., 500 S.W.2d 97. (Emphasis added).

"Clemency powers embodied in the parole system are beyond the reach of interference by the judicial branch, Art. IV, Sec. 11, Texas Const.; and any action by the judicial branch to frustrate or delay the exercise of the power by the executive branch is as much of an unconstitutional interference as is an attempted usurpation of that power. See, *Ex parte Giles* and *Smith v. Blackwell,* supra, for unconstitutional grants of authority to usurp clemency powers.

"This is the constitutional basis for the established rule that discussion of the parole law is always jury misconduct...." 580 S.W.2d at 351–352.

However, although discussion of the parole law by the jury is always misconduct, that misconduct does not always constitute the denial of a fair and impartial trial. It is that standard which determines whether a defendant must be granted a new trial under the provisions of Article 40.03(8). In *Heredia v. State,* 528 S.W.2d 847, 853 (Tex.Cr.App.1975), we stated:

"For example, the mere mention of the parole law would not be such misconduct as would require a new trial. Likewise, a discussion of the parole law, followed by instructions that it should not be discussed, coming from the court in response to a message from the jury or coming from a juror, after which it is not further discussed, would not be such misconduct as to require a new trial.... What does constitute such degree of misconduct as to deny the defendant a fair and impartial trial must be determined upon the facts of the individual case."

Since *Heredia,* a number of our cases have dealt with contentions that the trial court erred in refusing to grant a new trial under the provisions of Article 40.03(8). We will examine first the cases which affirmed the judgment of the trial court.

In *Austin v. State,* 531 S.W.2d 615 (Tex. Cr.App.1975), we held that the record failed to show that the discussion of the parole law caused the punishment assessed by the jury to be increased.

In *Ashabranner v. State,* 557 S.W.2d 774 (Tex.Cr.App.1977), although one juror's affidavit indicated that he had ultimately voted for a higher punishment after the jury's discussion of the parole law, the affidavit did not clearly show that the juror's decision was caused by the discussion.

In *McIlveen v. State,* 559 S.W.2d 815 (Tex.Cr.App.1977), the evidence at the hearing on the defendant's motion for new trial did not show that any juror relied on or was influenced by the comments in the jury room concerning the parole law.

In *Beck v. State,* 573 S.W.2d 786, 791 (Tex.Cr.App.1978), the court held:

"Although it is obvious that the jury improperly discussed the parole law, we are unable to say that Richardson or any other juror changed his or her vote as a result of the discussion. Her testimony is conflicting and she could only speculate whether the discussion affected the other jurors. She was sure that she herself had not consciously relied upon the discussion.... The trial judge, having the right to accept or reject any part of her testimony, obviously accepted Richardson's statements that she did not know about the other jurors but that the dis-

cussion about parole did not influence her. We are unable to say that the trial judge abused his discretion in overruling appellant's motion for a new trial."

In *Jones v. State*, 596 S.W.2d 134 (Tex.Cr. App.1980), the lone juror who initially voted for a lesser term of years than that ultimately assessed testified that his eventual decision was "not the result of or in any way influenced by . . . statements concerning how much time appellant would actually serve in prison." *Id.* at 137.

Each of these cases which affirmed the judgment of the trial court in the face of a challenge to the jury's misconduct based on Article 40.03(8) held that the defendant failed to show that the misconduct harmed him. That is, in each case the record did not show that the jury's ultimate decision on punishment was affected by its discussion of the parole laws.

Two cases since *Heredia* have reversed the judgment of the trial court because of jury misconduct under the provisions of Article 40.03(8). In *Sweed v. State*, 538 S.W.2d 119 (Tex.Cr.App.1976), the jury's discussion of the parole laws was extensive, and at least one of the jurors voted to increase the punishment after receiving information about the laws.

In *Sanders v. State*, 580 S.W.2d 349, 353 (Tex.Cr.App.1978), the court stated:

"We conclude from this record that the jury misconduct of discussion of the parole law was harmful and denied appellant a fair and impartial trial. The discussion was extensive and adversely affected two jurors' consideration of the probation issue."

These cases, decided under the provisions of Article 40.03(8), have consistently applied the same test for determining whether the trial court reversibly erred in refusing to grant the defendant a new trial. That test is: the defendant must show (1) that *any* discussion of the parole laws took place during the jury's deliberations (thereby showing jury misconduct), and (2) that the discussion denied him a fair and impartial trial. The latter requirement can be met by showing that even a single juror

voted for an increased punishment because of the discussion of the parole laws.

The State argues that we should adopt the "five-prong" test alluded to in *Heredia*, supra. That test for reversible error would require the defendant to show (1) that a misstatement of the law (2) asserted as a fact was made (3) by someone professing to know the law (4) which was relied upon by other jurors (5) who for that reason changed their vote to a harsher punishment. *Sanders v. State*, 580 S.W.2d 349 (Tex.Cr. App.1978), impliedly rejected that test. *See* Opinion by Dally, J., dissenting to the overruling of the State's motion for rehearing without written opinion. We now explicitly reject the five-prong test for reversible error.

As set out above, our holding that *any* discussion of the parole laws is jury misconduct is based upon our state constitution's separation of powers. Any attempt by the jury to interfere with the powers constitutionally granted to the executive branch is an unconstitutional interference with those powers. Whether that attempted interference is based upon correct or incorrect information, whether it is based upon an asserted fact or a guess, and whether anyone professed to know the law or simply used his layman's understanding, such an attempt is still unconstitutional. We, therefore, reiterate our holding that *any* discussion by the jury of the parole laws is jury misconduct. However, that misconduct requires the granting of a new trial only when the defendant can show that he was denied a fair and impartial trial. That showing can be made by showing that even a single juror voted for a harsher punishment as a result of that misconduct.

## II.

### Article 40.03(7)

V.A.C.C.P., Article 40.03 provides:

"New trials, in cases of felony, shall be granted the defendant for the following causes, and for no other:

\*      \*      \*      \*      \*      \*

"(7) Where the jury, after having retired to deliberate upon a case, has received other evidence; or where a juror has conversed with any person in regard to the case; or where any juror at any time during the trial or after retiring for deliberation, may have become so intoxicated as to render it probable his verdict was influenced thereby. The mere consumption of alcoholic beverage by a juror shall not be sufficient ground for a new trial. . . ."

As noted above, *Heredia v. State*, 528 S.W.2d 847 (Tex.Cr.App.1975), held that the jury's discussion of the parole laws could be analyzed as either jury misconduct or as the receipt of other evidence. We stated:

"We adhere to those pronouncements in prior decisions that it is common knowledge that from time to time inmates of the Texas Department of Corrections are released on parole. E.g., *Taylor v. State*, Tex.Cr.App., 420 S.W.2d 601. Consequently, the mere mention of this common knowledge would not constitute the receipt of other evidence, nor would a further discussion of any other matter of common knowledge by the jury. On the other hand, information may be given to the jury, by a juror or someone else, which would constitute receiving other evidence. Information which would constitute other evidence would include, for example, a juror relating his personal knowledge of some particular case from which the jury might then try to 'figure out' what the parole law is. Also, a misstatement of the law, by being incorrect, would constitute other evidence, since by being false it certainly could not be classified as 'common knowledge.' See e.g., *Moore v. State*, 171 Tex.Cr.R. 182, 346 S.W.2d 349. The receipt of such other evidence, even if nothing further be shown such as would constitute misconduct requiring a new trial under Section 8, on a proper set of facts could require reversal under Section 7." *Id.* at 852–853 (footnotes omitted).

As set out in Part I, above, our cases since *Heredia* which have analyzed jury discussion of parole laws as jury misconduct have consistently applied the same test for reversible error. The same cannot be said of their analysis of such a discussion as the receipt of other evidence.

*Austin v. State*, 531 S.W.2d 615 (Tex.Cr.App.1975), did not specifically refer to Article 40.03(7). Instead, the court seems to have merged its analysis of the receipt of other evidence with its analysis of jury misconduct. The court stated:

"While it appears that the jury discussed when appellant might be released on parole during their deliberations, it appears that no one professed to know the parole law. Further, it is not shown that any juror relied on any of the various suggestions made as to how long appellant would have to serve. We cannot conclude that the misstatement of the law had the effect of increasing the punishment assessed nor can we conclude that the misconduct of the jury was such as to have deprived the appellant of a 'fair and impartial trial.'" *Id.* at 618.

In *Ashabranner v. State*, 557 S.W.2d 774, 777, the court stated:

"While it appears from the affidavit that one of the jurors expressed his opinion as to when appellant might be released, he did not profess to know the law and did not misstate the law. Neither did he relate any personal knowledge of any particular case. The mere mention of the effects of the parole law constitutes jury misconduct, and the court in its charge instructed the jury to that effect. However, the mere mention by a juror of the prospects of the defendant being released before the end of his term, under the circumstances stated in the instant affidavit, does not constitute receipt of additional evidence, and is not such misconduct as to deny a defendant a fair and impartial trial, and does not require a new trial."

In *McIlveen v. State*, 559 S.W.2d 815 (Tex.Cr.App.1977), a juror misstated the length of time the defendant would have to serve. The court held that this misstatement constituted other evidence. However,

since the record of the hearing on the motion for new trial failed to show that any juror relied upon the misstatement or changed his vote because of the misstatement, the court affirmed the judgment.

In *Carrillo v. State*, 566 S.W.2d 902, 915 (Tex.Cr.App.1978), the court stated:

"The evidence shows at best that the jurors mentioned that which is common knowledge about the law of parole; i.e., some inmates of the Texas Department of Corrections are released prior to serving their full term, especially if they behave well in the penitentiary. No juror professed to know the law of parole and none misstated the law to the others. Such conduct on the part of the jury does not constitute receipt of additional evidence so as to require reversal under Article 40.03, Section 7, V.A.C.C.P., and although mentioning the parole law constitutes jury misconduct, here it was not such misconduct as to deny appellant a fair and impartial trial."

In *Beck v. State*, 573 S.W.2d 786, 790 (Tex.Cr.App.1978), the court stated:

"In the case at hand, it is undisputed that how long the appellant would have to serve in the penitentiary was discussed. Under the cases above cited [*Carrillo, McIlveen,* and *Ashabranner*], in order for this to constitute 'other testimony', the statements must have been made (1) by someone who professed to know the law, and (2) were misstatements of the law."

The court found that no one professed to know the law and the statements made in the jury room "were not misstatements and the jury was not misled thereby. Such therefore does not constitute receipt of 'other evidence'." *Ibid.*

In *Jones v. State*, 596 S.W.2d 134, 138 (Tex.Cr.App.1980), the court stated:

"After grappling with various tests and measures to decide whether misconduct in discussing the parole law is reversible error, in *Heredia v. State*, 528 S.W.2d 847, 850–853 (Tex.Cr.App.1975), the Court reverted to application of principles statutorily provided in Article 40.03(7) and (8), V.A.C.C.P., and distilled a twofold ap-

proach. Whether the jury received 'other testimony' detrimental to the accused or whether the degree of misconduct is such as to deny the accused a fair and impartial trial."

The court then found that the juror's "statement as to how long appellant would have to serve was a fairly accurate statement of the law and, perforce, not harmful." *Ibid.* (footnote omitted).

These cases reveal an inconsistency of standards for review. *Austin, Ashabranner,* and *Carrillo* mention (1) a profession of knowledge about the parole laws, (2) a misstatement about the operation of the parole laws, and (3) personal knowledge about a particular case. Since the appellant in each case failed to show any of those things, the cases can be read to require a showing of any *one* of those three things in order to show the receipt of other evidence. Equally plausible, however, is the reading applied in *Beck*; that both (1) and (2) are required to show the receipt of other evidence.

*McIlveen*, on the other hand, would appear to require (1) a misstatement about the parole laws and (2) reliance by a juror upon that misstatement. And *Jones* seems to say that a misstatement *is* harmful, but a correct statement of the law can never be harmful and, therefore, cannot be other evidence.

To say the least, the case law concerning jury discussion of the parole laws does not set forth a clear standard for review when the analysis is under the provisions of Article 40.03(7). Before I set out what I believe to be the only clear and workable solution to the problem, I will review the statute's purpose.

In *McDougal v. State*, 81 Tex.Cr.R. 179, 194 S.W. 944 (1917), this court reversed a conviction because the jury received other evidence after it retired to deliberate. That other evidence consisted of testimony from a juror concerning convictions of the appellant. The court stated:

"The statute the violation of which is complained of in this case is one which expressly directs that a new trial shall be

granted where the jury after retirement receives other testimony. The Constitution guarantees a public trial by an impartial jury and that the accused shall be confronted with the witnesses against him; and one of the provisions of the Code is that one is disqualified as a juror who is a witness in the case. A juror who knows damaging facts against the appellant should disclose them and disqualify himself upon the ground that he is a witness, and failing to do so and disclosing them to the jury after the retirement, can hardly be classified as an impartial juror. The testimony thus received by the jury in its retirement is contrary to the constitutional requirement giving the defendant the right to be confronted with the witnesses against him. Testimony thus received is under circumstances denying the right of cross-examination declared by our courts as an efficacious test for the discovery of truth.... The statutes mentioned were passed to preserve to parties accused of crime the constitutional rights referred to and to protect the state against a corrupt verdict. The inhibition against the receipt by the jury of evidence after its retirement is against legal evidence as well as illegal evidence only. If on the trial of the case the state had proved over the objection of appellant the prior conviction, it would have given its sanction to the introduction of the damaging fact which was not admissible.... If such evidence were introduced and its admission brought before this court for review, it would ... be reversible error. Under such circumstances the court would not call the jurors to inquire whether they were influenced by the introduction of this illegal evidence, but the fact that they were influenced by it would be presumed. It seems illogical to place upon the appellant a greater burden where the illegal evidence is received in his absence, in opposition to a constitutional right and statutory provision, than would be imposed upon him if the evidence had been introduced in his presence on the trial.... [W]hen a jury after it retires to consider its verdict receives other evidence damaging to the defendant, the presumption of injury obtains, to rebut which the state must do more than to elicit the conclusions of the jurors that they were not influenced." 81 Tex.Cr.R. at 186–187, 194 S.W. at 948–949.

More recent opinions by the court, aside from cases dealing with the jury's discussion of the parole laws, have followed the same per se presumption of harm. Under the provisions of Article 40.03(7), the court has focussed its inquiry upon the character of the "other evidence" rather than upon the harm suffered by the defendant. See *Garza v. State*, 630 S.W.2d 272 (Tex.Cr.App. 1982) (opinion on rehearing); *Hunt v. State*, 603 S.W.2d 865 (Tex.Cr.App.1980); *Rogers v. State*, 551 S.W.2d 369 (Tex.Cr.App.1977). If the other evidence is detrimental to the accused, harm will be presumed.

Our cases dealing with the jury's discussion of the parole laws have, however, taken an inconsistent approach in their analysis of whether the other evidence has been "detrimental" to the accused. Some have held that no "other evidence" was brought before the jury because the jurors' discussion amounted to no more than a discussion of that which is common knowledge: that inmates are credited by the Texas Department of Corrections with extra time for good behavior. *Plasentilla v. State*, 152 Tex.Cr.R. 618, 216 S.W.2d 187 (1948); *Walker v. State*, 150 Tex.Cr.R. 421, 201 S.W.2d 823 (1947). Others have required a showing by the defendant that the jury's discussion involved an incorrect statement of the law which caused the jury to assess an increased punishment. *Montello v. State*, 160 Tex.Cr.R. 98, 267 S.W.2d 557 (1954); *King v. State*, 141 Tex.Cr.R. 257, 148 S.W.2d 199 (1941). Still others have presumed that the defendant was harmed when the jury's discussion involved a misstatement of the parole laws. *Spriggs v. State*, 160 Tex.Cr.R. 188, 268 S.W.2d 191 (1954); *Price v. State*, 150 Tex.Cr.R. 161, 199 S.W.2d 168 (1946) (opinion on rehearing).

■ The inconsistencies among these cases demonstrate the difficulty with which they were forced into the mold of Article 40.03(7). In most cases in which a jury "has received other evidence," the evidence was relevant to some issue which may be material in a criminal case, such as a question of fact or the credibility of a witness or the character of the defendant.[1] The very terms of the statute—"*other* evidence"—indicate that they apply to evidence that is in addition to the evidence which was admitted at trial (or which could have been admitted had the appropriate issues been raised). As the *McDougal* opinion, supra, explained, the statute seeks to eliminate verdicts which are based on such "other evidence" because it has not been subjected to confrontation and cross-examination, because it may have been excludable under the rules of evidence, and because (if it came from a juror) it compromises the impartiality of the jury.

The jury's consideration of the effect of the parole laws is not like most cases of "other evidence" under these terms of Article 40.03(7). The future effects of the parole laws on a defendant's sentence are never a material issue in a criminal trial, and evidence on that issue is never admitted. Therefore, the jury's discussion of the parole laws will never be "other" evidence on that issue; it will be the only evidence on that issue. The harm of such discussions is different from the harms of "other evidence" which this provision of Article 40.-03(7) seeks to eliminate. Even if the defendant were allowed to confront and cross-examine the declarants, and even if the rules of evidence were satisfied, and even if the declarants were not the jurors themselves, the jury's basing its verdict on a discussion of the parole laws would be improper because it interferes with an executive function that is beyond the jury's province. *See Sanders v. State*, 580 S.W.2d 349 (Tex.Cr.App.1979).

Because the overriding harm of the jury's discussing the parole laws is different from the harm which the "other evidence" provision of Article 40.03(7) is designed to prevent, and because such discussions are not well characterized as "other evidence", it would not be appropriate to continue to apply the legal tests that are used in cases in which the jury has "received other evidence." For that reason, I would hold that cases dealing with the jury's discussion of the parole laws will hereafter be analyzed only as jury misconduct under the provisions of V.A.C.C.P., Article 40.03(8), rather than as the receipt of other evidence under the provisions of V.A.C.C.P., Article 40.-03(7). All other cases to the contrary should be overruled.

III.

The Case Before Us

■ We turn now to our examination of the record in this case. The appellant's motion for new trial had attached to it affidavits of five jurors. At the hearing on the motion each of the jurors testified. In addition, their affidavits were received into evidence.

Juror Cottrell testified that the possibility of early release or parole was discussed several times during the jury's punishment deliberations. According to him, the discussion was extensive at the point when the jury members began to worry that they would be declared a "hung jury." He could not remember whether the amount of time the appellant would supposedly serve was represented to be one-third of his sentence or three-fourths of his sentence. He also testified that the discussion about the parole laws played "an important role" in his decision. In his affidavit, Cottrell stated:

"This discussion played a major role in the sentence decision and I feel sure it swayed some of the members [sic] final decision. The probability of the defendant not serving the entire sentence was

---

1. This is not to say that in every case in which the jury "received other evidence," the evidence was relevant to an issue that actually was contested during the trial. It is, rather, that "other evidence" usually relates to issues that may be presented properly to juries in some criminal cases.

probably the basis for the 10 year decision, as this was more or less a compromise of punishment. The range for the sentence went from probation to 99 years."

Juror Gerlach testified that the parole laws were discussed several times during the jury's deliberations. She said that that discussion did "not necessarily" influence her decision, but that it was "a consideration." In her affidavit, she stated:

"During the deliberation, we tried not to consider this [the parole law], but at various times it would keep coming up. The fact the defendant would probably not serve the full prison term did help me in my decision making process to agree on the ten year sentence. This is because I was originally in favor of a lower sentence, but the jury had some members who were in favor of a heavy sentence. The 10 year decision was more or less a compromise of punishment."

Juror Mitchell testified that the jury's discussion of the parole laws was extensive, that figures of one-third and three-fourths of the sentence were mentioned, and that the discussions took place on several occasions. He also testified that the discussions had nothing to do with his determination that ten years was the appropriate punishment in this case. In his affidavit, he stated, "This did not have a bearing on my decision, but I cannot say if it did or not for the other members of the jury."

Juror McDonald testified that the jury discussed the parole laws on several occasions, and that "someone stated that he thought [the time a prisoner would serve] usually was about one-third, but no one knew definitely." She also said that the discussion was not really concentrated until "just the very end." At that point, according to McDonald, all the members of the jury entered into the discussion, and the discussions "very definitely" played a great part in their deliberations. In her affidavit, she stated:

"I personally do not like the ten year sentence that was handed down as I was for probation for Mr. Monroe [sic]. The ten year sentence was not an agreement of the jury, but a compromise, because the range of sentence was so great among the jury members. The reason I did not stay with my original idea of probation was because I thought if I caused a hung jury, in the next trial, Mr. Monroe [sic] may have a jury selected which has no one in favor of a light sentence. The reason I finally compromised and went along with the ten year sentence was because of the discussion by the jury members and my knowledge of the fact he probably would not serve the entire ten years. No one really knew how long he would have to serve, but I based my decision on hoping he would get out in much less time than ten years."

Juror Bevington testified that the jury discussed the parole laws several times. These discussions were isolated and occurred mostly during the last half of the jury's deliberations. He "thought about" the discussions during his deliberations. In his affidavit, he stated:

"Throughout the deliberation, the fact that the defendant would probably serve only one third of the actual sentence was mentioned by nearly all of the jury members at various times. We tried to not consider this, but it was brought out by nearly everyone. I honestly feel since I personally was in favor of probation and my knowing the defendant would probably only serve about one third of the sentence, this allowed me to agree with the final ten year sentence, since probation was just more or less dropped, since no one actually knew about what was involved in the time period selection of probation."

On this record, the court of appeals concluded that no reversible error occurred. We disagree. The court apparently first concluded that under Article 40.03(7), the jury had not received "other evidence" because no one professed to know the law. The court then continued:

"The misconduct in this case as to the one-third factor was a correct statement of the law. The three-fourths factor

mentioned alternatively, while it is substantially inaccurate, would have favored Munroe since it would have inclined the jury to a shorter sentence."

Under the test for jury misconduct set out in Part I, above, it is unquestioned that misconduct occurred in this case. All five jurors testified that the jury discussed the parole laws on several occasions. Furthermore, Jurors McDonald and Bevington testified that the discussions were most extensive toward the end of the jury's deliberations.

Four of the five jurors testified that the discussions entered into their decisions to vote for the ten year sentence ultimately assessed. Although Juror Cottrell did not testify concerning his initial position on punishment, he did testify that the discussion played an "important role" in his decision. Juror Gerlach testified that she was originally in favor of a lower sentence, and that the discussions helped her agree to the ten year sentence. Juror McDonald testified that she initially favored probation, and that she went along with the ten year sentence because of the discussion and her "knowledge of the fact he probably would not serve the entire ten years." Juror Bevington testified that he initially favored probation, and that the discussion that the defendant would probably only serve about one-third of the sentence allowed him to agree to the ten year sentence.

Thus, three of these jurors testified that they initially favored a lesser sentence than that ultimately assessed. They also testified that the jury's discussion of the parole laws influenced their decisions on punishment to some degree. Jurors McDonald and Bevington, each of whom initially favored probation, testified that they went along with the ten year sentence because of their belief that the appellant would not serve the entire sentence. The appellant has met his burden of showing that he was harmed by the jury's misconduct.

The judgment of the court of appeals is reversed. The cause is remanded to the trial court for a new trial.

ODOM, Judge, concurring in part and dissenting in part.

I concur in parts I and III of the majority opinion. I do not agree with part II of that opinion.

In its examination of Art. 40.03(7), V.A.C.C.P., which requires a new trial if the jury receives "other evidence" detrimental to the defendant, the majority concludes that a discussion of the parole laws can never be "other evidence." The principal reason advanced for this conclusion is that the effects of the parole laws can never be a material issue in a criminal case.

I do not see how the inadmissibility of such evidence prevents a discussion of such evidence by the jury from being classified as receipt of other evidence under Art. 40.-03(7), supra. For example, if a juror related the facts of a particular case he was familiar with, and told the other jurors about the effects of the parole laws in that particular case, would that information not be other evidence? Just because information about the effect of the parole laws is never admissible does not mean it is never "other evidence" under Art. 40.03(7), supra.

I therefore dissent to part II of the majority opinion and concur in parts I and III.

TOM G. DAVIS and TEAGUE, JJ., join this opinion.

CLINTON, Judge, concurring in part and dissenting in part.

"[S]ince the parole law is not for the jury's consideration," *Heredia v. State*, 528 S.W.2d 847, 853 and n.4 (Tex.Cr.App.1975), "[t]he trial court *should always attempt to eliminate the possibility of such misconduct by instructing the jury at the punishment phase that it should not discuss or consider the possible effects of the parole law or system*,"[1] *Moore v. State*, 535 S.W.2d 357, 358–359 (Tex.Cr.App.1976).[2] *Sanders v. State*, 580 S.W.2d 349 (Tex.Cr.App.1978) ex-

---

1. All emphasis is mine unless otherwise indicated.

2. But see *McIlveen v. State*, 559 S.W.2d 815, 819, n. 2 (Tex.Cr.App.1977) and *O'Bryan v.*

plains "the constitutional basis for the established rule that discussion of the parole law is always jury misconduct," at 352. Here, as in *Sneed v. State*, 625 S.W.2d 761 (Tex.App.—Amarillo 1981), the jury was admonished properly,[3] yet in each instance manifestly jurors violated that part of their oath to render a true verdict "according to the law and the evidence...," Article 35.-22, V.A.C.C.P.

The problem once again confronting the Court is to decide whether the violation, revealed at hearing on motion for new trial,[4] entitles appellant to a new trial. Without making still another revision in the law of jury misconduct—in the generic sense—I would find that it does.

The Court of Appeals dwelt too long on the fact that no juror participating in the forbidden discussion professed to know the parole law, for that notion was expressly considered, discredited and rejected by the Court in *Heredia v. State*, supra, at 850. While it is true that in *Beck v. State*, 573 S.W.2d 786 (Tex.Cr.App.1978) a divided panel considered lack of professed knowledge, the ultimate conclusion under Article 40.03(7), V.A.C.C.P., was that since the remarks were found not to be misstatement of the law they did not "constitute receipt of 'other evidence,' " *id.*, at 790. However, subsequently, without pausing to see if Juror Martinez claimed to know the law, the Court determined in *Jones v. State*, 596 S.W.2d 134 (Tex.Cr.App.1980) that Article 40.03(7) misconduct was not shown where the offending statement was "a fairly accu-

rate statement of the law," *id.*, at 138.[5] See also *Sanders v. State*, 580 S.W.2d 349 (Tex. Cr.App.1978–1979) for another rejection by the Court of the five point test—one of which is professing to know the law—advanced by the dissenting opinion on rehearing, at 356–357.

Accordingly, seeing no need to reexamine the underpinnings of Article 40.03(7), or to discard either principle settled on by *Heredia v. State*, supra, at 852, I join Judge Odom in dissenting to Part II of the opinion of the Court, but otherwise concur in the opinion of the Court.

McCORMICK, Judge, concurring in part and dissenting in part.

I write to express my approval of Part II of Judge Roberts opinion holding that "the jury's discussion of the parole laws will hereafter be analyzed only as jury misconduct under the provisions of V.A.C.C.P., Article 40.03(8), rather than as receipt of other evidence under the provisions of V.A. C.C.P., Article 40.03(7)."

I also join Judge Dally in his dissent. I would hold that hereafter the jury's discussion of the parole laws will be analyzed only under Article 40.03(8), V.A.C.C.P., and that the five-prong test of *Heredia v. State*, 528 S.W.2d 847 (Tex.Cr.App.1975), should be used to determine the presence of reversible error.

DALLY, Judge dissenting.

I cannot agree that a single juror's vote for an increased punishment following *any*

*State*, 591 S.W.2d 464 (Tex.Cr.App.1979): "Further, the giving of an admonitory instruction in order to guard against the jury's consideration of parole is largely left to the trial court's discretion." *Id.*, at 478. Thus, right at the threshold of this species of jury misconduct is revealed an ambivalence on the part of the Court about the first groundrule for preventing it.

**3.** See, e.g., Morrison & Blackwell, Wilson's Texas Criminal Forms Annotated (Eighth Edition, 1977) § 81.03, 8 Texas Practice 146; McClung, Jury Charges for Texas Criminal Practice (Revised Edition, January 1981) 240, 309.

**4.** That traditional new trial motion practice contemplated and sanctioned *procedurally* by

Articles 40.03(7) and (8), 40.05, 40.06 and 40.-07, V.A.C.C.P., is not allowed in Federal trial courts, see Federal Rules of Evidence, Rule 606(b); similarly, the proposed code of Texas Rules of Evidence disapproves of the practice by adopting as its own the Federal rule. Pamphlet, Senate Interim Study on Rules of Evidence (June 1982) 22–23.

**5.** *Beck v. State*, supra, was not alluded to in resolving the issue under § (7)—only in finding the acceding juror was not influenced by the strength of Martinez' assertions "in his eventual decision to come up to fifteen years," and thus appellant had not been deprived of a fair trial under Article 40.03(8), *id.*, at 138.

discussion of the parole laws denies a defendant of a fair and impartial trial such as would require the granting of a new trial. This is the rule announced by the majority.

I iterate my view in which I was joined by the Presiding Judge and two other Judges in *Sanders v. State*, 580 S.W.2d 349 (Tex.Cr.App.1979).

"To show that a jury's discussion of the parole law constitutes reversible error, we should re-adopt the test, extracted from a number of earlier cases, which was stated and discussed, but rejected in *Heredia v. State*, 528 S.W.2d 847 (Tex.Cr. App.1975). That test is that for reversible error to result, it must be shown that there was:

"(1) a misstatement of the law

"(2) asserted as a fact

"(3) by one professing to know the law

"(4) which is relied upon by other jurors

"(5) who for that reason changed their vote to a harsher punishment.

"The cases from which this test has been extracted are fully discussed in *Heredia v. State*, supra."

I dissent.

ONION, P. J., and W. C. DAVIS, J., join in this opinion.