Allen Levi MONROE, Appellant,

v.

The STATE of Texas, Appellee.

No. 132–83.

Court of Criminal Appeals of Texas,
En Banc.

April 3, 1985.

Michael P. Gibson, Michael D. McKinley,
Dallas, for appellant.

Henry Wade, Dist. Atty., R.K. Weaver,
Martin Lenoir and Bill Booth, Asst. Dist.
Attys., Dallas, Robert Huttash, State's
Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

This is an appeal from a conviction for voluntary manslaughter, a lesser included offense of murder charged in the indictment. The jury assessed punishment at 20 years' imprisonment and a fine of $10,-000.00.

On appeal the appellant inter alia raised the contentions that the trial court erred in overruling his amended motion for new trial because he had shown the jury received "other evidence" in violation of Article 40.-03(7), V.A.C.C.P., and had shown the jury engaged in "misconduct" in violation of Article 40.03(8), V.A.C.C.P.

On appeal the conviction was affirmed by the Dallas Court of Appeals in a panel opinion written by Justice Allen. *See Monroe v. State*, 644 S.W.2d 540 (Tex.App.—Dallas 1978).

The Court of Appeals held the trial judge did not abuse his discretion in overruling the new trial motion on ground the jury received "other evidence" concerning length of time the appellant would actually serve on any given sentence, in that once such expressions were stated, the jury foreman immediately admonished the jurors they were not to discuss that, and statements made were fairly accurate

statements of the parole law. The Court of Appeals further held there was no abuse of discretion in denying the motion for new trial on ground of "misconduct" in discussing parole laws during deliberations in that no "discussion" of parole laws ensued, there was no showing of more than one vote on punishment, and mere mention of parole drew immediate admonition of jury foreman that it was not a proper consideration and would not be discussed. In so holding, the Court of Appeals distinguished *Munroe v. State*, 637 S.W.2d 475, 478 (Tex. Cr.App.1982), on the facts.

In his petition for discretionary review appellant contends the decision of the Court of Appeals is in conflict with *Munroe* and the determination that no "discussion" occurred during jury deliberations on the issue of punishment was unsupported by the record. We granted appellant's petition for discretionary review to determine the correctness of the Court of Appeals' opinion.

Justice Allen in his opinion for the Dallas Court of Appeals discussed the evidence developed at hearing on the motion for new trial as follows:

"... Three jurors testified at the hearing on the motion for new trial. The jury foreman, Noel Pittman, in his testimony estimated that during the jury deliberation on punishment the length of time appellant would have to serve in the Texas Department of Corrections on any sentence assessed was mentioned on two or three occasions. He testified that on each occasion he said to the jury that 'the court had specifically proscribed such discussions and that we would not discuss that.' A second juror, Allen Crosland, testified that he recalled a couple of times during deliberation on punishment it was mentioned that the defendant would serve approximately one-third of the time assessed. Juror Crosland testified further that the jury foreman reminded the jury that they were not to talk about the length of time the defendant would serve for any sentence given but were to concern themselves with the specific number of years they were to assess as punishment. He testified that no juror mentioned any particular case with which he or she was familiar. He remembered the foreman's admonishing the jury a 'couple of times' that they were not to consider the length of time a defendant would serve on any given sentence. He further testified that statements were made two or three times during the deliberations on punishment with regard to the length of time a defendant would have to serve on a given sentence.

"The third juror to testify was Sharon L. Tharp. She testified that statements were made two or three times during the deliberations on punishment with regard to the length of time a defendant would have to serve on a given sentence. She remembered a mention of the statements that 'seven months equaled a year,' and 'if he is a good prisoner, he will be off in a third of his sentence.' She testified that one juror mentioned a case where the defendant served less than the sentence given. She testified that the jury foreman instructed the individuals who made the statements that their statements were not within the realm of that which they were instructed to discuss in the jury room. She testified that the statements were not discussed. When asked if she relied on the statements as being accurate she first answered, 'No.' In answer to a similar question she answered, 'Well, I don't know.' When the prosecutor persisted in propounding the same question in different ways, the witness testified that she did rely on the statements as being true and that the statements affected her verdict. The witness admitted that she possessed a general knowledge of the parole laws before appearing for jury service. The statement made which she claimed had affected her verdict was, 'That he would serve only a third of the time assessed.' She further testified that she knew that the jury was not supposed to consider the parole situation. She testified that she did consider the parole situation be-

cause somebody had to compromise. Juror Tharp told the trial judge that if the statements about parole had not been made she would have held out for a different verdict and would never have gone with the maximum sentence.

"Appellant contends that the statements made during jury deliberations concerning good time and early release required the trial court to grant a new trial upon it being shown that Juror Tharp relied on the statements. The evidence adduced at the hearing on the motion for new trial proved that parole was mentioned two or three times during jury deliberation at the penalty phase of the trial. Each time it was mentioned before the verdict was reached, the jury foreman admonished the jury that the court had instructed them that they were not to consider the length of time one would serve on any sentence imposed and that they were not going to discuss that subject. No juror professed to know the law. The proof shows that no discussion was held on the statements made. Based on this evidence we must determine whether the trial court abused its discretion in refusing to grant a new trial so as to require reversal of the cause by this court."

Since the time of the decision in question, this Court has laid down a five-prong test to determine if a jury's discussion of parole laws results in reversible error.

■ In *Sneed v. State,* 670 S.W.2d 262 (Tex.Cr.App.1984), this Court stated:

"After further consideration, we re-adopt the five-prong test gleaned from *pre-Heredia* cases.

"To show that a jury's discussion of the parole law constitutes reversible error, it must be shown that there was

" '(1) a misstatement of the law

" '(2) asserted as a fact

" '(3) by one professing to know the law

" '(4) which is relied upon by other jurors

" '(5) who for that reason changed their vote to a harsher punishment.'

"Such test shall apply to cases under §§ 7 or 8 of Article 43.03, supra. All cases to the contrary are now overruled." (Emphasis supplied.)

■ Applying this test to the facts of the instant case, it is clear that the trial judge did not abuse its discretion in overruling the motion.

The judgment of the Court of Appeals is affirmed.

CLINTON, Judge, dissenting.

Before us on appellant's petition for discretionary review is a conviction for voluntary manslaughter, affirmed by the Dallas Court of Appeals. See *Monroe v. State,* 644 S.W.2d 540 (Tex.App.—Dallas 1982).

On direct appeal, appellant contended the trial court had committed reversible error in overruling his amended motion for new trial because: (1) he demonstrated jurors received "other evidence" in violation of Article 40.03(7), V.A.C.C.P.; and, (2) he demonstrated jurors engaged in "misconduct" in violation of Article 40.03(8), V.A.C.C.P.[1] Underlying both contentions was appellant's evidence establishing that the effects of the law of parole had been mentioned during jury deliberations, and that at least one juror voted for an increased punishment as a result.

---

1. Article 40.03, V.A.C.C.P. provides in relevant part:

"New trials, in cases of felony, shall be granted the defendant for the following cause, and for no other:

\* \* \* \* \* \*

(7) Where the jury, after having retired to deliberate upon a case, *has received other evidence;* \* \* \*

(8) Where, from the *misconduct of the jury,* the court is of the opinion that the defendant has not received a fair and impartial trial. It shall be competent to prove such misconduct by the voluntary affidavit of a juror; and the verdict may, in like manner, be sustained by such affidavit;"

(All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

In rejecting appellant's contention that the jury had received "other evidence," the court of appeals concluded, *inter alia*, a statement "something like ... that seven months was equal to one year" is "consistent with common knowledge and is generally the practice followed by the administration of the Texas Department of Corrections. Therefore, it is not a misstatement of the common practice." In concluding the above did not constitute a "misstatement of the law," the court of appeals mentioned, but did not address, appellant's argument that since there was an affirmative finding he used a deadly weapon in this case, the statement made in the jury room was clearly incorrect. See Article 42.12, Sec. 15(b), V.A.C.C.P.[2] The court of appeals concluded its rejection of appellant's first ground of error by declaring the testimony of Juror Tharp (that the mentioned effect of parole had influenced her ultimate agreement to the maximum sentence) could not be considered in determining prejudice because it constituted an "impermissible impeachment of the verdict."

In overruling appellant's complaint that "jury misconduct" had denied him a fair and impartial determination of punishment, the court of appeals held "there is no evidence that there was a discussion by the jury of the parole laws."

Petitioning this Court for discretionary review, appellant contends: (1) the court of appeals' decision is in direct conflict with *Munroe v. State*, 637 S.W.2d 475 (Tex.Cr.App.1982); and, (2) the determination below that no "discussion" occurred during the punishment deliberations is utterly unsupported by the record.

In rejecting appellant's contentions, the majority relies on *Sneed v. State*, 670 S.W.2d 262 (Tex.Cr.App.1984). That case created a "five-prong standard" for reviewing claims such as this without intimating

any rational basis whatever for those criteria. Instead, *Sneed* claimed its new test was a "re-adoption" of a test gleaned from cases prior to *Heredia v. State*, 528 S.W.2d 847 (Tex.Cr.App.1975); one need not be a legal scholar in order to see, upon a reading of *Heredia*, supra, that neither it nor any case cited by it, ever espoused the so called "five-prong test" now established by *Sneed*.

In view of the complete lack of precedent for, or evolutionary history of, the integrated "five-prong test" pronounced in *Sneed*, it seems to me the appropriate role of a discretionary review court is to explain to the bench and bar the reasoning underlying such an abrupt and radical departure from sound policies heretofore advanced, admittedly with some inconsistency, by this Court.

It is to this failure of the majority in *Sneed* as well as cases such as the instant one in which the rule in *Sneed* is invoked, that I strenuously object. I do agree that our analysis of parole discussion cases could be improved; I do not agree that the impossible burden contrived by the majority in *Sneed* can be justified in law or logic.

My own suggestions for refashioning the law and the reasons for them follow.

In *Munroe*, supra, it was unambiguously stated and held by a majority of the Court, that

"... *any* discussion by the jury of the parole laws is jury misconduct. However, that misconduct requires the granting of a new trial only when the defendant can show that he was denied a fair and impartial trial. That showing can be made by showing that even a single juror voted for a harsher punishment as a result of that misconduct." [Emphasis original]

**2.** At the time appellant was tried and convicted, Article 42.12, Sec. 15, supra, provided in part:

" * * *

(b) ... If a prisoner is serving a sentence for the offenses listed in Section 3f(a)(1) of this Article or if the judgment contains an affirmative finding under Section 3f(a)(2) of

this Article, he is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less, but in no event shall he be eligible for release on parole in less than two calendar years. * * *"

The author of *Munroe, supra,* was of the opinion that consideration of the effect of parole by the jury during punishment deliberations in express violation of the trial court's instructions should be analyzed only as jury misconduct under the provisions of Article 40.03(8), supra, rather than as the receipt of other evidence under Article 40.03(7), supra. That sentiment, however, did not carry the day, and in *Diaz v. State,* 660 S.W.2d 93 (Tex.Cr.App.1983), a unanimous Court determined Article 40.03(7), supra, is still a viable vehicle for complaint of parole law consideration by a jury.

In the instant case, the opinion of the court below does make some things clear. First, by ignoring the actual effect the law of parole had on the ultimate assessment of appellant's punishment at the maximum term of confinement and focusing instead on the lack of an "extensive" round table discussion, the court of appeals has failed to appreciate the policy governing the law in this area and the reason interjection of parole law into jury deliberations is prohibited. This failure on the part of the court of appeals appears to be but one product of somewhat inconsistent pronouncements from this Court. For example, in *Sanders v. State,* 580 S.W.2d 349 (Tex.Cr.App.1978), the constitutional basis for the rule is well explicated: jurors have no business considering the operation of parole law because its exercise and application is exclusively in the province of the executive branch. But then, in other cases, the fact that a discussion centered around a "correct statement of the law" seems suddenly to make the jury's consideration of parole law permissible despite the trial court's specific admonition against it. The diametric opposition of these notions in terms of public policy is apparent. This paradox is unfortunately perpetuated by the *Sneed* majority.

Second, while our opinion in *Munroe,* supra, clearly synthesized prior decisions

and the analytical process to be pursued when it is alleged the jury committed "misconduct" addressed by Article 40.03(8), supra, no affirmative standards had been set out for analyzing a claim that the jury received "other evidence" under Article 40.03(7), supra. This void in our pronouncements had left the courts of appeals to devise their own criteria for what constitutes "other evidence;" here, a remarkably incorrect statement of *fact* ("that seven months was equal to a year")[3] was labeled a correct statement of *law* and utilized to conclude no "other evidence" was received by the jury. Undue emphasis on, as well as confusion between "fact" and "law," may also have been fostered by prior decisions.

Third, it is manifest that the court below was exasperated by the lack of possible corrective action trial courts might take to avoid having parole law affect punishment verdicts in the future. Members of this court share that frustration. Generally, when appellate courts are constrained to reverse criminal convictions, it is due to some failure on the part of counsel or the trial court. Appellate opinions are ordinarily addressed to avoiding such failures in the future. But it seems that if there are divergent views among jurors regarding an appropriate punishment, inevitably the subject of parole is broached in order to facilitate a compromise—and this is true no matter how carefully and sternly the trial court has instructed against that consideration. Thus, appellate judges are left with the feeling that their efforts in this area are nothing more than judicial wheelspinning, having no consistent corrective effect on the trial process whatever.

## I.

## PUBLIC POLICY

As was observed above, *Sanders,* supra, cannot be improved upon as a statement of

---

**3.** While some inmates *might* receive credit for having served one year after actually serving only approximately seven months by the calendar, this is by no means a foregone *fact* at the time any given accused is tried.

For example, in this case, the statement is factually incorrect (if for no other reason) because of the deadly weapon finding.

the constitutional basis for prohibiting those participating in the criminal judicial process from basing punishment on an expectation that executive clemency powers will be exercised, or from attempting to delay the exercise of clemency powers or to avoid the possible granting of parole by increasing the punishment. I need not reiterate that explanation here.

In *Munroe*, supra, a majority of the Court observed:

"Whether [a jury's] attempted interference [with powers constitutionally granted to the executive branch] is based upon correct or incorrect information, whether it is based upon an asserted fact or a guess, and whether anyone professed to know the law or simply used his layman's understanding, *such an attempt is still unconstitutional.*"

637 S.W.2d at 478.

It is true that it is "common knowledge" that "from time to time" inmates of the Texas Department of Corrections are released on parole, as so many of our cases have stated. Indeed, this is a generic fact, not necessarily an aspect of law. But suggestions that a life sentence *is* 17 years, or that convicts *are released* after serving one third of their assessed sentences are patently incorrect: *most* convicts are entitled to *be considered* for release on parole after earning credit for one third of their assessed sentences. See Article 42.12, Sec. 15(b), supra.

Judge Odom may well have made the most factually accurate observation in this regard in *Heredia v. State*, 528 S.W.2d 847, 853, n. 4 (Tex.Cr.App.1975), which was reiterated in *Sanders*, supra, at 351:

"The determination to grant parole, *if and when made*, rests upon many facts and events not known to the jury, not proper for consideration by the jury and not having occurred at the time of trial. * * * The decision to parole, *if and when made*, is beyond the province of the courts ... and therefore of the jury, and is exclusively a matter within the province of the executive branch of government, under proper regulation by the legislative branch."

The thrust of this observation may be easily translated into an understandable verity: there is *no way to predict* whether or when any given convict will be released on parole.

There is no way for this court to predict this; there is no way courts of appeals or trial courts can predict this, and there is no way for juries to predict it.[4]

This is the practical and factual basis for the rule that jurors are not to consider the effect of parole in assessing sentences—aside from, though intertwined with, the constitutional basis for the rule.[5]

·Accordingly, *any* interjection of the law of parole or its incidents into jury deliberations as a reason to assess a punishment, is not only legally improper (since it is neither constitutional nor relevant to the issue of punishment assessment, see Article 37.07, Sec. 3(a) and (b), V.A.C.C.P.) but is also erroneous because it suggests a factually inaccurate basis for punishment. Indeed, this is the very reason it has been repeatedly held that *any* discussion of parole law is misconduct. *Munroe*, supra; *Sanders*, supra; *Heredia*, supra.

It is clear then that if a single juror votes for an increased punishment because of some interjection of the subject of parole or its legal or factual incidents by another juror into punishment deliberations, harm-

---

**4.** I am aware that there is sentiment favoring charges to juries on the law of parole eligibility this session of the Legislature. The mind boggles at the thought of the potential for reversible error inherent in such a proposition. Surely, any attempt to inform juries of the parole "law applicable to the case," Article 36.14, V.A.C.C.P., in any given situation is so fraught with peril, it is not worth the risk. The only charge which should be given—by legislative mandate or oth-

erwise—is something like that discussed *post* at 458.

**5.** This is also the reason it would be useless to instruct juries upon the constitutional and statutory provisions governing the executive branch's exercise of clemency powers as was advocated by the State in oral argument before this Court in *Munroe*.

ful jury misconduct has occurred. Article 40.03(8), supra. It matters not that the topic, once broached, was not "discussed" in a "round table" "give and take" conversation; neither does it matter that the foreman reminded the jury of the trial court's instructions against such discussion. *Heredia*, supra. What does matter is that the convict's punishment was arrived at on the basis of an improper consideration by at least one juror. *Id.*

I would hold the court of appeals erred in so narrowly construing our use of the word "discussion" in *Munroe*, supra. I reiterate: any oral interjection, be it a "mention" or "statement," of the law of parole *or its legal or factual incidents*, constitutes a matter offered by the speaker for the consideration of other jurors and is therefore "discussion" within the meaning of *Munroe, Sanders* and *Heredia*, supra, and I so hold.

## II.

### RECEIPT OF OTHER EVIDENCE

In *Munroe*, supra, the so called "five-prong" test[6] which was rejected in both *Heredia*, supra, (see Dally, dissenting); and *Sanders*, supra, (see Dally, dissenting), was explicitly rejected by a majority of the Court.

It is clear that, while not mentioned in Article 40.03(7), supra, the Court has generally required a showing of harm to the defendant: something akin to the fourth and fifth "prongs" of the rejected test; see n. 6, *ante*; or the second criterion of the test for jury misconduct under Article 40.-03(8), supra.

However, *what* kinds of "mentions," statements, etc., constitute "other evidence" has been a good bit less clear.[7]

It was observed in *Heredia*, supra, and has since been oft quoted:

"... [I]nformation may be given to the jury, by a juror or someone else, which would constitute receiving other evidence. Information which would constitute other evidence would include, for example, a juror relating his personal knowledge of some particular case from which the jury might then try to 'figure out' what the parole law is. Also, a *misstatement of the law, by being incorrect, would constitute other evidence*, since by being false it certainly could not be classified as 'common knowledge.' "

528 S.W.2d at 852–853.

Both the State and the court of appeals have read the above passage to mean that a statement regarding parole *must* be a misstatement of the law in order to constitute "other evidence." The concomitant argument is made that, if the statement is "essentially" a correct recitation of the law, then no "other evidence" has been received.

Not only is such a rationale illogical, but it also proceeds from a misreading of *Heredia*, supra.

If we begin on the premise that the effect of parole laws is an improper and harmful basis for punishment determination, (and therefore all such evidence offered under the rules of evidence by a litigant during the penalty phase of a trial is to be summarily excluded), it follows that a *correct* statement regarding that prejudicial, inadmissible information made by a juror during deliberations is "other evidence" in the classic sense. Cf. *Price v. State*, 150 Tex.Cr.R. 161, 199 S.W.2d 168 (1947); and see, e.g., *Moore v. State*, 171 Tex.Cr.R. 182, 346 S.W.2d 349 (1961). Moreover, the utter futility of an appellate court's attempting to determine whether a

---

6. That test would require the defendant to show: (1) that a misstatement of the law (2) asserted as a fact was made (3) by someone professing to know the law (4) which was relied upon by other jurors (5) who for that reason changed their vote to a harsher punishment.

7. In fact, the only thing certain was that the speaker need *not* profess to "know the law" in order for the content of his statement to be "other evidence." *Heredia*, supra.

particular statement is "correct" has been well illustrated.[8]

Indeed, we are again brought full circle, for it is clear that the only accurate statement about the operation of parole is that there is no way to predict whether or when any given convict will be released on parole.

Accordingly, I would adhere to all prior decisions, as the Court did in *Heredia,* supra, at 852, to the effect that "it is common knowledge that *from time to time inmates* of the Texas Department of Corrections *are released on parole*" and the mention of this common knowledge will not be considered interjection of "other evidence." But any other assertion made—whether substantially correct or not—which would be excluded at trial (where its accuracy and relevance could be tested by adversarial process),[9] surely constitutes "other evidence" within the meaning of Article 40.-03(7), supra, when foisted into punishment deliberations by a juror, and I would so hold.

To recapitulate, "other evidence" in this context is any assertion made regarding the law of parole or its legal or factual incidents which would be ruled inadmissible if offered at the punishment phase of trial, other than the common understanding that "from time to time" inmates of the Texas Department of Corrections are released on parole. If other evidence has been received by the jury in this regard, the defendant should demonstrate that at least one juror agreed to an increased penalty assessment *because of* the assertion made during deliberations, before reversal would be necessitated. Such a demonstration could, of course, be made by either direct [10] or circumstantial evidence.

In this conclusion, I necessarily reject the line of cases which would require a reversal if the "other evidence" received is "untrue," even if there is no showing it affected the ultimate punishment verdict. See, e.g., *Jones v. State,* 462 S.W.2d 578 (Tex. Cr.App.1971); *Mays v. State,* 320 S.W.2d 13 (Tex.Cr.App.1959); *De La Rosa v. State,* 167 Tex.Cr.R. 28, 317 S.W.2d 544 (1958); *Jackson v. State,* 248 S.W.2d 748, 157 Tex. Cr.R. 323 (1952). I cannot agree that reversal of a conviction is the appropriate remedy when there has been no showing

**8.** Starting with the opinion below: "something like ... that seven months was equal to a year" was held to comport with "common practice." However, as the record shows, our appellant will not be receiving the benefit of "common practice" since he was found to have committed the instant offense with a deadly weapon. See also Douglas dissenting in *Sanders,* supra, at 355, n. 1 and accompanying test, where the majority is "roasted" for having reversed a conviction in *Mays v. State,* 320 S.W.2d 13, 167 Tex.Cr.R. 339 (1959) on the basis of a "misstatement of the law" which turned out to be less liberal than reality; the irony of the futility of basing reversals *or* affirmances on the "accuracy" of such statements by jurors was apparently lost on the dissenting author in *Mays,* as well as on the *Sneed* majority.

**9.** Interestingly, the second and third "prongs" of the standards adopted in *Sneed*—that the questioned statement must be "(2) asserted as a fact (3) by one professing to know the law"—have apparent genesis in the rules of evidence which are applicable to adversarial proceedings, and designed specifically to protect the integrity of information received by the jury.

Thus, the rationale is that matters *not* asserted as fact by one professing personal knowledge

(such as hearsay, opinion, etc.) would generally be inadmissible in court and are therefore, in a strict sense, not "evidence;" since such matters are not "evidence," they cannot be "other evidence."

This remarkable progression certainly turns the policy behind rules of evidence on its head by ultimately condoning the jury's receipt of facts in the deliberation room which would be excluded from their consideration at trial!

**10.** Apparently the general rule prohibiting a juror from explaining the reasoning behind his verdict does not apply in cases where a *prima facie* showing of improper parole discussion has been made. Compare, e.g., *Sanders,* supra, with *Eckert v. State,* 623 S.W.2d 359 (Tex.Cr.App. 1981); *Daniels v. State,* 600 S.W.2d 813 (Tex.Cr. App.1980); *Arnold v. State,* 486 S.W.2d 345 (Tex. Cr.App.1972); *Adams v. State,* 481 S.W.2d 884 (Tex.Cr.App.1972).

The justification for the rule's suspension is equally apparent in this context: If jurors were unable to testify to the reasons for their punishment votes, the courts would be unable to determine whether the improper discussion was harmful; new trials would be required upon the mere showing that an improper discussion took place. Article 40.03(7), supra; see also n. 11, *post.*

that the "other evidence" regarding parole affected or influenced a juror.[11] Accordingly, I would overrule these cases, their precursors and progeny.

## III.

### PREVENTION OF ERROR

It is painfully apparent that a new commitment to preventing improper parole discussions and resulting defective punishment verdicts is overdue. The standard admonition against considering the indeterminate sentence law or possible actions of the board of Pardons and Paroles is obviously insufficient.[12]

I believe jurors fail to take this instruction seriously because they do not understand the policy behind it and are therefore factually misinformed about the operation of parole;[13] indeed, they may well believe the intent of the instruction is to hide something from them. It follows that they would be better equipped to remove the operation of parole laws from consideration if they were given a common sense reason for doing so. As has been stated *ante*, the most understandable, practical reason—particularly from a layman's perceptive—is that *no one can predict* when a convict will be released on parole, or whether he will ever be released on parole at all.

Accordingly, I would recommend that anytime a jury is charged upon the impropriety of considering the length of time a defendant will actually serve on an assessed sentence as in n. 12, *ante*, the trial court should add an explanation of the *reason* it should not be considered. As stated *ante*, the most factually accurate explanation of this I have found is contained in n. 4 of the opinion in *Heredia*, supra, quoted *ante* at p. 456. A synthesized version of this charge might read as follows:

"Further, you are instructed that the determination to grant parole, if and when made, rests on many facts and events not known to the jury and not having occurred at the time of trial. Since it cannot be predicted at this time when or even whether parole will be granted, you are not to mention, refer to, discuss or consider how long the defendant might be required to remain in confinement to serve the sentence you decide to impose. Such matters come within the exclusive jurisdiction, at some future time, of the Board of Pardons and Paroles and the Governor of the State of Texas, and are beyond the province of the courts, and therefore, of the jury."[14]

---

11. Thus, I would reject all prior standards or analyses which would require reversal without a showing that the parole discussion actually affected the sentence assessed, and thereby harmed the defendant.

   I am aware that this holding constitutes a departure from the general rule applicable to Article 40.03(7), supra, cases, that "other evidence" received need only be "detrimental to the accused" in order to constitute reversible error. The departure is compelled in parole discussion cases because, unlike other kinds of "other evidence," the existence of parole is uniquely a matter of common knowledge, potentially implicated in every felony trial. Moreover, the effect of an improper parole discussion on the jury's verdict can be quantitatively ascertained much more readily than the effect of other kinds of "other evidence."

12. "During your deliberations you are not to consider or discuss the Indeterminate Sentence Law or the possible actions of the Board of Pardons and Paroles or how long this defendant will be required to serve the punishment which you assess."

Morrison and Blackwell, 8 *Texas Practice*, Criminal Forms Ann. Sec. 81.03 (8th ed. 1977).

   Or, as the jury was instructed in this case:
   "Further, you are instructed that you are not to mention, refer to, discuss or consider how long the Defendant will be required to remain in confinement to serve the sentence *you decide to impose. Such matters come* within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas."

13. It seems the public's "common knowledge" in this regard is really more accurately described as widespread misconception. Since the misdeeds of parolees are newsworthy, the public—judging from assertions made by jurors—is under the impression that *all* convicts are released early on parole. It was, of course, "common knowledge" at one time that the earth is flat.

14. If the Legislature is concerned about accurately informing juries about the law of parole and avoiding reversals for discussions of it by juries as well as arguments by counsel, this is the charge to be mandated by statute.

The addition of the above recommended charge or its equivalent to jury instructions would also create a self-correcting procedure for improper arguments concerning the operation of parole made by counsel. The harmful effect of a prosecutor's improper argument would often be removed if either the trial judge could instruct, or defense counsel could argue in response, that no one can predict whether or when, if ever, "this defendant" will be released on parole. The potential benefits of giving the jury complete, accurate information are great. Compared with reversals, retrials and successive appeals, the additional burden in giving this recommended instruction on the administration of criminal justice would be miniscule.

To the majority's adherence to the unsupportable rule contrived in *Sneed*, I dissent.

TEAGUE and MILLER, JJ., join.

TEAGUE, Judge, dissenting.

I wholeheartedly join all of the scholarly dissenting opinion that Judge Clinton has filed in this cause. His words of wisdom, concerning jurors who violate the usual instruction that is given by the trial judge—that jurors are not to discuss how long the defendant will be required to serve his sentence [1]—are long overdue.

I observe that Judge Clinton has set out on page 458 a proposed instruction to jurors as to why they should not bother themselves with our parole law when they are deliberating on what punishment should be assessed the defendant.

I would add to his suggested instruction the following: "Violation of this instruction can subject the offender to contempt of court and a possible punishment of a fine of not more than $500 or by confinement in the county jail for not more than six months, or by both a fine of not more than $500 and confinement in the county jail for not more than six months."

Art. 1911a, V.A.C.S., of which all trial judges of this State are aware, expressly provides that trial judges of this State have the power of contempt and may punish any offender with a fine not to exceed $500 or confinement in the county jail for not more than six months or by both such fine and confinement. A juror who violates a trial judge's jury instruction that he or she is not to discuss how long a defendant will be required to serve his or her sentence subjects himself or herself to contempt of court.

Although we are all aware that some trial judges of this State have invoked their contempt power and held jurors in contempt for being late to court, for not showing up for jury duty, and other transgressions, I am unaware of any instance where any trial judge of this State has ever held a juror in contempt of court for violating the usual instruction that he or she is not to discuss what effect, if any, our parole law might have on his or her verdict of guilt or punishment. And I believe that this omission has contributed to more and more jurors violating the instruction.

I firmly believe that if trial judges of this State had in the past been more prone to invoke and apply their contempt power to jurors who had violated the usual admonition not to discuss the parole law, a contention such as that made in this cause would be infrequently urged in our appellate courts, rather than frequently asserted in our appellate courts as appears to be the case today. I am firmly convinced that if more trial judges would punish violators by remanding them to the county jail to serve at least three (3) days, not only would such get the attention of the violator, but word would quickly spread in the district or county that the trial judge or trial judges of that district or county will not tolerate such a violation.

---

1. The usual instruction that is given in our trial courts is as follows: "You are further charged as part of the law in this case that you are not to discuss among yourselves how long the accused will be required to serve the sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas, and should not be considered by you."