Allen Levi MONROE, Petitioner–
Appellant,

v.

James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.

No. 90–1298.

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1992.

John D. Nation, Dallas, Tex., for petitioner-appellant.

R. Ray Buvia, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, GOLDBERG, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

On May 11, 1981, petitioner-appellant Allen Levi Monroe (Monroe) was convicted of voluntary manslaughter in a Texas court and was sentenced to the maximum term of twenty years' imprisonment. The Texas Court of Criminal Appeals affirmed his conviction and sentence on April 3, 1985. *Monroe v. State*, 689 S.W.2d 450 (Tex. Crim.App.1985). He later filed in federal district court the instant petition for writ of habeas corpus under 28 U.S.C. § 2254, contending that he was denied due process by the jury's consideration, in its deliberations at the punishment phase of his trial, of the effects of parole. He now brings this appeal from the district court's denial of habeas relief. We affirm.

### Facts and Proceedings Below

On December 1, 1980, Monroe was charged by indictment with the murder of Cathy Monroe, his wife. On his plea of not guilty, Monroe proceeded to trial on May 11, 1981. The jury convicted Monroe of the lesser included offense of voluntary manslaughter. The punishment phase of the trial then ensued. After deliberating for just over an hour, the jury assessed Monroe's punishment at the maximum of 20 years in the Texas Department of Corrections and a fine of $10,000.[1]

Following his conviction and imposition of sentence, Monroe learned that during the punishment phase of the trial some of the jurors had commented on the possible effect parole would have on the time Monroe would actually serve. Monroe filed a motion for new trial, and a hearing was held on this issue. At the hearing, the jury foreman, and two other members of the

jury testified. Noel Pittman, the foreman, testified that "[t]wo or three times" during deliberations certain jurors commented on the amount of time Monroe might serve in the penitentiary. Pittman recalled that the terms "credit for good time" and "credit for good behavior" were not used, and the word "parole" was also not used. Pittman stated that, aside from isolated comments about the possibility that Monroe might serve less than the full term of his sentence, no "discussion" on this topic took place. Further, Pittman testified that whenever such comments were made he admonished the jury that the trial judge had charged that the actions of the Parole Board were beyond the scope of their deliberations.[2] Pittman denied that any juror actually professed to know the Texas law on parole.

Allen Crosland, another juror on Monroe's case, testified that he was discussing a lesser sentence when another juror told him that Monroe would not have to serve the full term. Crosland stated that he felt this remark was intended to persuade him to agree to a higher term. However, Crosland testified that he recognized that "the Judge had instructed us not to talk about that, that we were to look at the specific number of years, not what somebody would serve." Crosland denied that the remarks influenced his verdict.

A third juror, Sharon Tharp, was called to testify. The essence of her testimony was that many jurors had already compromised by agreeing to convict Monroe of the lesser included offense of voluntary manslaughter, but would not agree to a term of less than the maximum of twenty years. Tharp testified that she believed at that point that she would have to compromise or the jury would be hung and "we never would have come out of there." Tharp

---

1. Voluntary manslaughter is a second degree felony under Texas law, Tex.Penal Code Ann. § 12.33 (Vernon 1989), and is thus punishable by a maximum of 20 years' imprisonment and a fine of $10,000. Tex.Penal Code Ann. § 12.33 (Vernon 1974).

2. The jury was instructed in this case, with regard to parole, as follows:

"Further, you are instructed that you are not to mention, refer to, discuss or consider how long the Defendant will be required to remain in confinement to serve the sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas."

testified that despite the trial court's instruction to the contrary, she considered the possibility of parole when deciding to compromise.

Tharp testified that according to her recollection the actual remarks made "were that a third of the time was usually what was actually served of the full sentence and that seven months equaled a year." She remembered that one juror had mentioned a case where the defendant served less than the sentence given. She also remembered hearing the words "parole" and "credit for good time." Tharp testified that, aside from the isolated comments, no general discussion of parole occurred. Tharp admitted that previous to the trial she had general knowledge that inmates were often released early on parole, and that none of the jurors professed to have specific legal knowledge of the parole process. Tharp also confirmed Pittman's testimony that he had admonished the jury not to bring the subject of parole into their deliberations.

Following the hearing, the state trial court denied Monroe's motion for new trial. Monroe appealed his conviction and sentence to the Texas Court of Appeals, which affirmed in a lengthy opinion addressing each of Monroe's four grounds of error. *Monroe v. State,* 644 S.W.2d 540 (Tex. App.—Dallas, 1982). Included within those grounds was the claim that the jurors engaged in misconduct under Texas law [3] by discussing at the punishment stage of the trial the amount of time Monroe would be required to serve from any given sentence. The Texas Court of Criminal Appeals thereafter granted Monroe's petition for discretionary review on his claim of juror misconduct. The Court of Criminal Appeals ultimately held, however, that the trial court

did not abuse its discretion in denying Monroe's motion for new trial, and it affirmed the judgment of the Court of Appeals, which had affirmed Monroe's conviction and sentence. *Monroe v. State,* 689 S.W.2d 450 (Tex.Crim.App.1985).

Monroe also filed an application for a state writ of habeas corpus challenging his conviction. On November 12, 1987, in an unpublished opinion, the Court of Criminal Appeals partially granted the writ to the extent of deleting the jury's affirmative finding of use of a deadly weapon. In all other respects, however, the application was denied.

Having exhausted his state remedies, Monroe in January 1989 filed the present application for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, again challenging the trial court's failure to grant him a new trial because of juror misconduct.[4] The United States Magistrate assigned to the case recommended that relief be denied. Over Monroe's written objections, the district court adopted the findings and recommendations of the magistrate. This appeal followed.

### Discussion

#### I. Standard of Review

 In considering a state prisoner's writ of habeas corpus, a federal court is required to accord any findings of the state courts on "factual issues" a "presumption of correctness" under 28 U.S.C. § 2254(d).[5] *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985). A federal habeas court should not overturn state court findings of fact if they have "fair support" in the record. *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). With regard to ju-

---

**3.** Texas law provides that a new trial shall be granted in a felony case where:

"[F]rom the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial. It shall be competent to prove such misconduct by the voluntary affidavit of a juror; and the verdict may, in like manner, be sustained by such affidavit...." Tex.Code Crim.Proc.Ann. art. 40.03(8) (Vernon 1979).

**4.** Monroe also raised below the issue of prosecutorial misconduct due to prejudicial statements made by the prosecutor during final argument. As Monroe has failed to pursue that contention on appeal, it is deemed abandoned. *See Hobbs v. Blackburn,* 752 F.2d 1079, 1083 (5th Cir.), *cert. denied,* 474 U.S. 838, 106 S.Ct. 117, 88 L.Ed.2d 95 (1985).

**5.** This requirement is subject to certain specified exceptions, none of which is here applicable.

ror misconduct, only such conduct that deprives the defendant of a fair and impartial trial warrants granting habeas relief. *De La Rosa v. State*, 743 F.2d 299, 304 (5th Cir.1984), *cert. denied*, 470 U.S. 1065, 105 S.Ct. 1781, 84 L.Ed.2d 840 (1985).

## II. Consideration of Parole

■ Monroe's sole argument on appeal is that the statements about parole made during deliberations violated his constitutional rights. First, Monroe asserts that he was denied his due process rights because the jury improperly increased his punishment based on an expectation that the state would at some point exercise its clemency powers and release Monroe early. Monroe next asserts that the parole comments violated his Sixth Amendment rights of confrontation, cross-examination and effective assistance of counsel because he had no opportunity to test the jurors' statements by the adversarial process.

The thrust of Monroe's arguments is that the jurors' discussion of parole, in violation of state law,[6] rendered his trial fundamentally unfair because at least one juror has admitted to relying on such comments in agreeing to assess the maximum punishment. Even if in this case the jurors' comments constituted reversible error under state law (which we do not decide),[7] they did not necessarily rise to the level of a federal constitutional violation. *Seaton*

*v. Procunier*, 750 F.2d 366, 368 (5th Cir.), *cert. denied*, 474 U.S. 836, 106 S.Ct. 110, 88 L.Ed.2d 90 (1985). The Supreme Court has indicated that a jury's consideration of executive clemency powers does not render a defendant's trial fundamentally unfair under the federal constitution. *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 3458, 77 L.Ed.2d 1171 (1983). *See also Mendez v. Collins*, 947 F.2d 189 (5th Cir.1991). In *Ramos*, the Court considered whether permitting a capital sentencing jury to consider the governor's power to commute a life sentence without possibility of parole is constitutional. The Court held:

"[W]e do not suggest that there would be any federal constitutional infirmity in giving an instruction concerning the Governor's power to commute the death sentence. We note only that such comment is prohibited under state law.... Surely, the respondent cannot argue that the Constitution prohibits the State from accurately characterizing its sentencing choices.

" * * * *

"We sit as judges, not as legislators, and the wisdom of the decision to permit juror consideration of possible commutation is best left to the States. We hold only that the Eighth and Fourteenth Amendments do not prohibit such an instruction." *Ramos*, 103 S.Ct. at 3455 n. 19, 3460.

---

6. Until the addition in 1985 of article 37.07, section 4(a), to the Texas Code of Criminal Procedure, under Texas law it was generally impermissible, and usually reversible error, for the jury to consider the parole law or good conduct time in their deliberations on punishment. However, perhaps facing the reality that jurors are often aware of parole and are apt to discuss it during deliberations, the Texas legislature, by enacting article 37.07, section 4, saw fit to partially "enlighten" the jury on the parole law of Texas. Although the statute was almost immediately struck down as violating the due course of law provision of the Texas Constitution, *Rose v. State*, 752 S.W.2d 529, 537 (Tex.Crim.App. 1987), the legislature may have succeeded in resurrecting the provision through the passage of a constitutional amendment in 1989. *See Broussard v. State*, 809 S.W.2d 556, 557 (Tex. App.—Dallas, 1991; petition for review refused).

7. However, we note that even before the legislature stepped in in 1985, not every mention of

parole constituted reversible error in Texas. *See McCartney v. State*, 542 S.W.2d 156, 162 (Tex.Crim.App.1976). In *Sneed v. State*, 670 S.W.2d 262 (Tex.Crim.App.1984), the Texas Court of Criminal Appeals held that a five-part test must be satisfied to show that a jury's discussion of parole law constitutes reversible error. The required elements are: (1) a misstatement of the law, (2) asserted as a fact, (3) by one professing to know the law, (4) which is relied upon by other jurors, (5) who for that reason changed their vote to a harsher punishment. *Id.* at 266. As discussed in the text *infra*, we conclude that the complained of comments were not misstatements of the law on parole, nor were they assertions of authoritative fact. Thus, Texas law was apparently not offended by the denial of the motion for new trial on account of the jury-room comments. *See Monroe v. State*, 689 S.W.2d 450, 452 (Tex.Crim.App. 1985) (finding Monroe's argument to fail the *Sneed* test).

Because it is not repugnant to the federal constitution for a state to accurately instruct the jury on parole procedures, it follows that a state trial juror's accurate comments about parole law do not offend the federal constitutional rights of the defendant.

■ In the instant case, the evidence on the motion for new trial reflected a mention of good time credit, "like seven months was equal to one year" and a mention that "if he is a good prisoner, he will be off in a third of the time of the twenty years." We observe that these statements were roughly accurate expressions of state law. The state appellate court found the statement concerning good time credit, allowing one to serve a year in seven months, was consistent with common knowledge and the general practice of the Texas Department of Corrections. *See Monroe v. State*, 644 S.W.2d at 543. Consistent with *Wainwright, supra*, 105 S.Ct. at 853, we afford this finding a presumption of correctness; and, in any event, Monroe does not challenge the accuracy of the good time comments.

We also conclude that the statement regarding serving a third of the sentence was a roughly accurate statement of the parole law as expressed in Tex.Code Crim.Proc. Ann. art. 42.12 § 15(b) (Vernon 1979).[8] At the time Monroe was tried and convicted, section 15(b) provided that prisoners *"shall be eligible* for release on parole when their calendar time served plus good conduct time equals one-third of the maximum sentence imposed or twenty years, whichever is less" (emphasis added). However, Mon-

roe challenges the jurors' comments as inaccurate, characterizing the comments as statements that Monroe would *actually be released* after serving a third of his sentence, rather than merely *eligible* for parole at that time. Construing the testimony in the light most favorable to the state, as it is appropriate for us to do in light of the denial of Monroe's motion for new trial, we conclude that the jurors' statements are more fairly characterized as representations of *possible* early release. In this regard, we also emphasize that, although the statements were accurate expressions of Texas law, they were not made in the context of assertions of legal expertise. Each of the three jurors who testified at the hearing on the motion for new trial stated that the jury room comments were made as expressions of opinion or common knowledge, and that no speaker purported to know or authoritatively state the law on the subject. These jurors also admitted being aware generally of parole law prior to the trial. We further emphasize, as did the state courts, that when such expressions of opinion were made, the foreman of the jury immediately admonished the jury that they were not to mention or consider early release.

Based on the foregoing, we conclude that the comments about parole were brief, isolated expressions of lay opinion and were also substantially correct statements of the law. Accordingly, we hold that the comments complained of did not deprive Monroe of a fair trial under the United States Constitution.[9]

---

**8.** At the time of sentencing, Monroe's conviction reflected an affirmative finding of use of a deadly weapon. Article 42.12, § 15 then provided: "(b) .... [I]f the judgment contains an affirmative finding of [use of a deadly weapon], [the prisoner] is not eligible for release on parole until his actual calendar time served, *without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less,* but in no event shall he be eligible for release on parole in less than two calendar years." Tex.Crim. Pro. art. 42.12 § 15 (Vernon 1979) (emphasis added).
Therefore, the comments that if Monroe was a good prisoner he would serve only a third of his time were not then entirely accurate. However,

in light of the fact that the Texas Court of Criminal Appeals deleted the deadly weapon finding, making the statements accurate as applied to Monroe, we conclude that any prejudice (if any) to Monroe's federal constitutional rights in this respect has been cured.

**9.** Because we find, even considering the testimony of all three jurors, that Monroe's trial was not rendered fundamentally unfair by the parole comments, we do not reach the potentially more difficult question of whether Juror Tharp was competent to impeach her verdict. *See United States v. D'Angelo*, 598 F.2d 1002, 1004 (5th Cir.1979) (recognizing that "[t]he sanctity of the verdict may be impugned only by evidence of improper external influences on the

## Conclusion

For the reasons stated, the district court's dismissal of Monroe's petition for habeas corpus relief is

AFFIRMED.

---

jury's decision"). *But see Sneed v. State,* 670 S.W.2d 262, 266 (Tex.Crim.App.1984) (adopting five-part test for determining whether jury discussion of parole constitutes reversible error, including juror reliance factor). Arguably here,

because the comments all originated within the jury room, and were based on common knowledge, the jurors did not receive any "external influence."